| Title of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| ▮ | ▮ | 4 |

## SUMMARY OF EVENT

Undercover purchase of firearms and ammunition from Jesus DOMINGUEZ and Terry FERGUSON, prohibited person and multi-convicted felon.

## NARRATIVE:

1. **UNDERCOVER CONTACT:** On November 9, 2015, at approximately 18:11 hours, ATF Special Agents (S/A) Christopher J. Labno, Ricky Villacis and Mike Ramos, along with Chicago Police Department (CPD) Humberto Gutierrez, acting in an undercover capacity, met with Jesus "Jessie" DOMINGUEZ (Hispanic male, DOB: ▮) and Terry FERGUSON, white male, DOB: ▮ and purchased approximately (24) stolen firearms, (1,600) rounds of live ammunition and other firearms related items (see attached property summary reports for descriptions and serial numbers of items purchased) in exchange for $10,000 in United States Currency (USC) and additional "prop" merchandise.

2. S/A Labno should note that this undercover transaction was previously arranged through recorded telephone calls and text messages between S/A Labno and DOMINGUEZ which are documented in a separate Report of Investigation (ROI). Prior to this undercover contact, both S/A Labno, Ramos and S/A Villacis were equipped with a disguised audio and video recording devices as well as an electronic transmitter. This report is based upon Agents' observations as well as a review of the electronic surveillance evidence associated with this transaction.

3. On this same date, at approximately 17:43 hours, S/A Villacis parked the undercover vehicle on the west side of the Taqueria Los Magueyes parking lot located at 7101 S Harlem Ave, Bridgeview, IL. At approximately 17:46 hours, S/A Labno placed a recorded outgoing call to DOMINGUEZ at (630) 891-1537. When DOMINGUEZ answered S/A Labno told him that Agents were at the restaurant and DOMINGUEZ responded, "I'm coming right there. I'm gonna grab those things and come right to you." The call then ended. At approximately 17:50 hours, Agents noted a black Lexus sedan pull into the restaurant parking lot and park opposite the restaurant on the west side of the building facing Harlem Avenue. Agents observed three men dressed in hooded sweatshirts exit this vehicle and enter the restaurant. Officer Gutierrez observed that at least one of the men appeared to

| Prepared by: Christopher J. Labno | Title: Special Agent, Chicago I Field Office | Signature: | Date: 12-1-15 |
|---|---|---|---|
| Authorized by: Bernard G. Hansen | Title: Group Supervisor, Chicago I Field Office | Signature: | Date: 12-8-15 |
| Second level reviewer (optional): Jeffery A. Magee | Title: Special Agent in Charge, Chicago Field Division | Signature: | Date: |

resemble a known associate of DOMINGUEZ. Agents subsequently observed this vehicle license plate as Y802298.

4. At approximately 17:57 hours, Agents relocated their undercover vehicle to the east side of the restaurant parking lot. At approximately 17:59 hours on this same date, S/A Labno placed a recorded telephone call to DOMINGUEZ at (630) 891-1537. When DOMINGUEZ answered he told S/A Labno "I'm close bro, I'm close. I'm at 73rd and Harlem right now." S/A Labno asked DOMINGUEZ if he needed to stop and pick up the firearms and DOMINGUEZ responded "Naw, I'm coming right to you." The call then ended.

5. At approximately 18:10 hours on this same date, S/A Labno received an incoming recorded telephone call from DOMINGUEZ calling from (630) 891-1537. When S/A Labno answered DOMINGUEZ, DOMINGUEZ asked "What are you driving bro?" S/A Labno then told DOMINGUEZ where he was located in the parking lot and DOMINGUEZ advised that "I gotta run inside and take a piss real quick." The call then ended.

6. At approximately this same time, Officer Gutierrez observed a blue Dodge Caravan mini-van drive into the parking lot and park on the west side of the restaurant near the above described black Lexus sedan. At approximately 18:11 hours, Agents exited the undercover vehicle and observed DOMINGUEZ approach wearing a black or dark grey hooded sweatshirt. DOMINGUEZ greeted Agents, hugging S/A Labno and Villacis. S/A Labno should note that DOMINGUEZ not only hugged S/A Villacis but rubbed his back and side in a motion Agents recognized as DOMINGUEZ searching Agents for a "wire," or some type of disguised recording device.

7. S/A Labno and DOMINGUEZ then examined some of the "prop" merchandise which S/A Labno had previously purported to DOMINGUEZ to be stolen winter jackets, sweatshirts and cellular telephone cases. DOMINGUEZ examined the items and explained that he would be interested in purchasing more. DOMINGUEZ then advised that he had recently come into possession of some counterfeit goods and had hoped to sell them for a lot of money but could not have as they were counterfeit.

8. The conversation then turned to the stolen firearms with DOMINGUEZ advising Agents that the restaurant belonged to his friend. DOMINGUEZ stated, "This my buddy's restaurant. He don't want me doing this right here. I got 'em in my deli truck—we just gotta go right here." DOMINGUEZ then pointed to an area a few streets south and east of the restaurant. S/A Labno suggested that they conduct the gun transaction across the street from the restaurant but DOMINGUEZ brought up concerns over detection by law enforcement. DOMINGUEZ stated, "Naw, fuck that Bridgeview Police are dicks over there." S/A Labno asked how far they needed to go as he had another worker bringing his money for the firearms and didn't want to have to direct the man too far. DOMINGUEZ stated, "We just can go look at 'em. It's cool. I don't care, you might not like 'em." DOMINGUEZ told Agents that the guns were in his "deli truck," and that it was "literally right there," pointing down 71st Street east of Harlem.

9. DOMINGUEZ and S/A Labno then further discussed the "prop" merchandise as well as what DOMINGUEZ made selling the stolen scrap aluminum which he had earlier tried to sell S/A Labno. DOMINGUEZ stated, "I didn't do bad. That Aluminum they gave me .58 (per lbs.) bro. Cash."

10. At this point, DOMINGUEZ used his cellular telephone to show S/A Labno photographs of the gun he had for sale. DOMINGUEZ stated, "I don't know if "Cookie" showed these to you." S/A Labno told DOMINGUEZ that he had already seen the pictures of the guns. S/A Labno should note that these photographs were the same photographs provided to Agents by ATF CI 10897. S/A Labno then asked DOMINGUEZ to point out where

the guns were located and DOMINGUEZ walked toward 71st Street and pointed saying, "It's in my deli truck. I have a deli truck. I go across the street at the federal building. I post up. Like a fucking Jimmy Johns on wheels." DOMINGUEZ told Agents to follow him to the location and S/A Labno asked about neighbors or anyone else who might call police. DOMINGUEZ replied, "Nobody's over there. Listen, bro, we own Nottingham Park. We own like thirty houses over here in this little neighborhood." Agents then agreed to follow DOMINGUEZ to where the guns were stored.

11. At approximately 18:20 hours, Agents returned to their undercover vehicle and observed DOMINGUEZ return to his blue mini-van. As he walked to this van, Agents observed that DOMINGUEZ was using his cellular telephone to make a telephone call. Agents also observed that DOMINGUEZ's van bore the Illinois License plate number Z445043. Agents then drove behind DOMINGUEZ, following him as he exited the parking lot to Harlem, then turned east on 71st Street, driving eastbound to Sayre, then south to 72nd Street, then west on 72nd Street. Agents pulled up next to DOMINGUEZ who pointed across the street to a large white Mercedes truck with markings for deli sandwiches sales. S/A Labno should note that Agents observed that this truck was parked in the driveway of 7029 W. 72nd Street, Chicago, Illinois, just in front of this residence's detached garage. DOMINGUEZ bragged that he had used the truck to sell over 1,600 subs at the Jimmy Buffett concert, then told Agents to park their car. Agents then parked in front of DOMINGUEZ on the north side of the street opposite to 7038 W 72nd Street, Chicago, Illinois.

12. Agents exited their undercover vehicle and followed DOMINGUEZ to 7029 W. 72nd Street's driveway. DOMINGUEZ continued to the white panel van and told Agents to come back and look at the guns. S/A Labno suggested that DOMINGUEZ pull the truck down the driveway into the streetlight and DOMINGUEZ advised that everything was safe where it was. DOMINGUEZ stated, "I just want us to be safe. I want all of us to be safe." Agents observed an unidentified white male and female in the area of the front porch of the 7038 W. 72nd Street; these individuals appeared to live at this residence and continued to look across the street at Agents.

13. At approximately 18:25 hours, DOMINGUEZ walked from the white panel truck to area where the driveway met the city sidewalk. Agents observed that he appeared to be using his cellular telephone to make a telephone call. DOMINGUEZ told Agents that there was no one here but him, but that he had called his deli truck driver and "the driver's bringing me the key right now. At approximately 18:26 hours, S/As Labno and Villacis observed a white male who appeared to be in his mid to late fifties drive westbound on 72nd Street from Sayre in a grey or silver Ford F150 bearing Illinois B truck license plate 1423262. Agents then observed the driver to have dark hair and facial hair. S/A Labno should note that Agents later observed that FERGUSON was approximately 5'5" to 5'6." Agents observed this truck stop in the driveway of the 7029 W. 72nd Street residence and DOMINGUEZ walk to the driver's window. S/A Labno should note that this individual was subsequently identified by Agents as FERGUSON. Agents then observed FERGUSON hand DOMINGUEZ a key and DOMINGUEZ returned to the white panel truck, started it and pulled the truck down the driveway further toward the street. Agents observed that the Ford F150 then drove away eastbound on 72nd Street.

14. Agents then approached the deli truck and DOMINGUEZ told Agents, "Check this out dog, I got a bad ass deli truck." DOMINGUEZ then detailed how he used the truck to make money selling sandwiches downtown during the lunch hour. DOMINGUEZ the opened the back doors of this truck and showed Agents the firearms inside the truck. Once inside, Agents observed that there appeared to be approximately (28) firearms laid out on the food preparation counter and storage areas inside the truck. In addition, buckets full of ammunition were stored under the counters with pistol cases piled on top of some of the rifles and shotguns. S/A Labno should note that Agents recognized the interior of the truck from both the photographs which DOMINGUEZ had shown Agents earlier in this undercover meeting as well as the photographs the CI had shown Agents.

15. S/A Villacis then asked DOMINGUEZ if the guns were "clean." DOMINGUEZ responded "Yeah." DOMINGUEZ told Agents, "There you got buckets of ammo here and then you got all the hand pieces in here," pointing to various hand guns. S/A Labno told DOMINGUEZ that he knew that the guns were all stolen but wanted to know where the guns had come from. DOMINGUEZ stated, "No, No, my guy, his great grandpa passed away." S/A Labno then asked DOMINGUEZ if he (DOMINGUEZ) had stolen the guns. DOMINGUEZ responded, "Yeah, it was inside of a safe." DOMINGUEZ continued, "Yeah, cause the state was going to get all his shit."

16. Agents then inspected the guns. DOMINGUEZ told Agents, "you got the banana clips for the auto AKs," and pointed to several magazines. DOMINGUEZ further pointed out handguns, saying, "Pistols in here, here, here. This a police edition. Did you see that Colt? This a .357 King Cobra."

17. S/A Labno and DOMINGUEZ then bargained over the firearms. S/A Labno asked DOMINGUEZ, "What you looking to get for all of this?" DOMINGUEZ responded, "I told you fifteen [$15,000.00] right? I'll knock off four bucks you take everything. Give me eleven [$11,000.00] and take everything." S/A Labno proposed that he give DOMINGUEZ $10,000.00 in cash and the "prop" merchandise which DOMINGUEZ had examined earlier. DOMINGUEZ agreed saying, "Yeah, I'll do ten [$10,000.00] and a grand worth of shit."

18. S/A Labno and DOMINGUEZ then discussed moving the guns in one of S/A Labno's low key cars. DOMINGUEZ advised, "If I would have known you real good I would have drove this thing myself to you. I don't know you like that." S/A Villacis and Officer Gutierrez continue to examine the guns while S/A Labno and DOMINGUEZ continued to speak. DOMINGUEZ then went on to further discuss the white deli truck, telling S/A Labno that the truck was a 2013 Mercedes van which had cost $50,000.00. DOMINGUEZ stated that he had approximately $25,000.00 invested in the van and could make over $6,000.00 a week in revenue at peak operation. As they spoke, S/A Labno observed the license plate of this vehicle to be an Illinois D truck license plate: 358203. S/A Labno also observed that there was a telephone number printed on the truck: (708) 426-8141.

19. DOMINGUEZ then turned the conversation to his lawyer whom he identified as Beau Brindley. DOMINGUEZ stated, "My lawyer, he's a fed lawyer. Beau Brindel—look him up. He was indicted by the feds. My own lawyer was indicted by the feds. Ten counts and beat every count. He's a beast." DOMINGUEZ then went on to detail how he had hired Brindley for his criminal associates. DOMINGUEZ stated, "This what happened. One of our guys was locked up and out of the world for ten years. So we got an appeal for him. So I go, 'Hey, Beau, can you bring him some cigarettes he's fucked up and they ain't letting him shop.' The only way he could shop was off other inmates." DOMINGUEZ stated that Brindley told him "Hell yeah Jessie, for you. So he brought him cigarettes and other motherfuckers got to hating and snitched on my lawyer." DOMINGUEZ then detailed Brindley's philosophy related to him (DOMINGUEZ) that before someone is allowed to practice law they should be required to sit in the prison receiving area for thirty days to see how things really work.

20. S/A Labno then told DOMINGUEZ that he was going to call his worker and give him directions to bring the money to the residence. DOMINGUEZ then provided directions, telling S/A Labno to tell his guy "to turn on 72nd street." The conversation then returned to DOMINGUEZ's deli truck with DOMINGUEZ telling S/A Labno that he and his partner owned the slogan "Chicago's Finest."

21. At approximately 18:34 hours, S/A Labno used his cellular telephone to contact S/A Ramos and advise him where Agents were located. S/A Ramos advised that he was enroute to 7029 W. 72nd Street, Chicago, Illinois

ATF EF 3120.2 (10-2004)
For Official Use Only

REPORTS_001-000091

with Agent Cashier Funds (ACF) to purchase the firearms.

22. At approximately 18:35 hours, S/A Labno observed DOMINGUEZ appear to use his cellular telephone to place a telephone call. S/A Labno observed DOMINGUEZ tell the caller "Yeah, everything is good. Um, yeah, ten and some merch." That's cool? All right, yeah, now." The call then ended.

23. S/A Labno then asked DOMINGUEZ how often he ran across guns as he was stealing things. DOMINGUEZ responded, "This has been the first time ever to tell you the truth. I'm gonna keep it real with you. Okay, there was supposed to be two hundred Gs [$200,000.00] in the safe. There was a bunch of fuckin' guns so I was kinda pissed off." DOMINGUEZ indicated that he told the guy who had tipped him off to the burglary that the safe was empty and he kept the guns to sell.

24. At approximately 18:38 hours, DOMINGUEZ asked S/A Labno, "That your guy in the Caddy?" S/A Labno agreed and motioned for S/A Ramos to join Agents by the truck. S/A Ramos then handed S/A Labno a white plastic bag containing $13,000.00 in ACF in the form of United States Currency (USC). S/As Labno and Ramos noted that, at this time, they observed that the above described Ford F150 driven by FERGUSON had returned and parked in the driveway of 7038 W. 72nd Street. Agents observed that FERGUSON had exited the truck and was talking with an unidentified person in the driveway of this residence.

25. S/A Labno then took the bag containing the ACF in the form of USC from S/A Ramos and S/A Ramos began to assist S/A Villacis and Officer Gutierrez in loading the firearms and ammunition into the undercover vehicle. S/A Labno should note that S/A Villacis had previously retrieved this vehicle from its parking spot in front of 7038 W. 72nd Street and backed it into the driveway of 7029 W. 72nd Street, Chicago, Illinois.

26. At approximately 18:40 hours, S/A Labno and DOMINGUEZ walked to the passenger side of the undercover vehicle. S/A Labno began counting the money S/A Ramos had provided and he (S/A Labno) and DOMINGUEZ had a conversation. Specifically, S/A Labno asked DOMINGUEZ if he dealt in heroin. DOMINGUEZ responded, "I got some people. Why you need some?" DOMINGUEZ further stated, "I fuck with more right now on the girl, white girl." S/A Labno asked DOMINGUEZ if he dealt with large amounts of cocaine and DOMINGUEZ stated, "bricks, not anymore really. You got bricks? I buy em, but what's the numbers on them?" S/A Labno told DOMINGUEZ that the price depended on how many kilograms of cocaine someone purchased at one time. DOMINGUEZ stated, "I grab two at a time usually. Like every two weeks I can go through five." S/A Labno advised that he could get DOMINGUEZ a price but told S/A Labno, "but if it is I only want to deal with you."

27. S/A Labno and DOMINGUEZ continued to have a conversation while S/A Labno counted the money. DOMINGUEZ advised that he had made $25,000.00 by selling the stolen aluminum which he had offered S/A Labno. DOMINGUEZ referred to this deal as "like nothing, 'cause I got to split it three ways. So this is peanuts." DOMINGUEZ then advised that he was interested in purchasing more "prop" merchandise and discussed pricing with S/A Labno. DOMINGUEZ then realized that S/A Labno had brought approximately $13,000.00 as he had initially requested for the firearms and praised S/A Labno as being an honest business man. DOMINGUEZ stated, "Oh, you brought everything I originally asked for. Good man, that's how I know you weren't playing games."

28. As S/A Labno continued to count the ACF in the form of USC, DOMINGUEZ asked if S/A Labno had a supplier of high quality marijuana. DOMINGUEZ stated, "Hey you got any Kush? If they're about twenty-five [$2,500.00 per lbs.] I'll grab a bunch of them. Right now it's harvest season. Everybody's got them for twenty-

five to twenty-seven and if they're good. My guy just left. Brought me twenty. They were gone in two days and now I won't see him for two to three weeks and people are hounding me already 'cause he drives all the way to north Cal."

29. At approximately 18:43 hours, S/A Labno provided $10,000.00 in ACF in the form of USC to DOMINGUEZ and told DOMINGUEZ to "start counting." DOMINGUEZ began counting this money and he and S/A Labno continued to have a conversation. S/A Labno told DOMINGUEZ that he was going to "hook up" "Cookie" for coordinating this transaction. DOMINGUEZ advised that he would give "Cookie" some money as well as he believed that "Cookie" didn't have any food in his refrigerator. S/A Labno told DOMINGUEZ that he planned on giving "Cookie" one of the handguns for coordinating this transaction as "Cookie" had been asking him for one. S/A Labno advised DOMINGUEZ that "Cookie" had told S/A Labno that he ("Cookie") was a felon and could not legally poses a firearm. DOMINGUEZ stated that he understood and would also call "Cookie." At this point, S/A Labno observed DOMINGUEZ receive an incoming telephone call on his cellular telephone. S/A Labno observed DOMINGUEZ tell the caller, "Yeah bro, we're good bro, trust me." The call then ended.

30. DOMINGUEZ continued to count and discussed the location where the transaction was taking place. DOMINGUEZ stated that Agents were in an area of Chicago called Nottingham Park. DOMINGUEZ described the area as "mailing address is Chicago, our kids go to Burbank schools and our taxes is Bridgeview."

31. At approximately 18:48 hours, S/A Labno observed DOMINGUEZ receive an incoming telephone call. DOMINGUEZ told the caller "let me finish up, I'm counting some paper." The call then ended.

32. The conversation then turned back to cocaine with DOMINGUEZ telling S/A Labno "Those things, if you were telling me if their around thirty-eight [$38,000.00] you know, thirty-seven [$37,000.00]. Yeah, I'll do that. At least two."

33. At approximately 18:51 hours, Agents observed FERGUSON across the street at 7038 W. 72nd Street speaking with a bearded man who was holding a minor child. S/A Labno asked DOMINGUEZ about FERGUSON and DOMINGUEZ advised "that's my guy." DOMINGUEZ then took the bag containing the $10,000.00 of ACF in USC into his hand and began to walk toward FERGUSON. DOMINGUEZ told S/A Labno "let me run this to my partner." Agents then observed DOMINGUEZ walk across the street to FERGUSON and hand him the bag containing the $10,000.00 of ACF in USC. After a short conversation, FERGUSON took the bag containing the above described money and place it in the above described Ford F150 truck. Agents then observed DOMINGUEZ walk back across the street to S/A Labno. At this same time, Agents observed the above described bearded white male carrying the minor child walk up the driveway of 7029 W. 72nd Street, Chicago, Illinois, past S/A Labno and into the house. As this man passed S/A Labno, S/A Labno greeted him and apologized for being on his driveway. S/A Labno told the man, "We'll be out of your way in a minute." The man replied, "Naw, it's good man."

34. When DOMINGUEZ returned, S/A Labno told DOMINGUEZ that he wanted to hear the story of how he stole the firearms. DOMINGUEZ asked S/A Labno, How did I get this?" S/A Labno agreed and DOMINGUEZ told S/A Labno "The money is in the house, it's somewhere in the house. I gotta go back in there. I gotta find it." S/A Labno asked DOMINGUEZ "who told you about it?" DOMINGUEZ pointed at FERGUSON and told S/A Labno "His nephew." DOMINGUEZ continued, "he's fighting with the State 'cause there's taxes owed on the house. The state's trying to get everything. He said the money's in there please find it for me. So he thought it was in the safe."

35. DOMINGUEZ then loaded the "prop" merchandise into the deli truck. DOMINGUEZ told S/A Labno "I appreciate it." DOMINGUEZ continued "My guy, he's been so nervous because of his kids. The one who just came," referring to the man with the small child who S/A Labno had greeted. DOMINGUEZ further explained that his partner had a much more advantaged life than he (DOMINGUEZ) did. DOMINGUEZ further discussed the theft telling S/A Labno "I could use a hand bro. I took that [safe] off of the second floor by myself. I winched and oiled it." S/A Labno asked where the house had been where DOMINGUEZ had stolen the safe containing the guns and DOMINGUEZ stated "far out."

36. At approximately 18:56 hours on this same date, S/A Labno promised to keep in contact with DOMINGUEZ and Agents left the area. As S/A Labno got into the undercover vehicle, DOMINGUEZ told S/A Labno "My old lady has a five carrot engagement ring and it's not 'cause I went and bought it." Agents then pulled out of the driveway and observed FERGUSON, DOMINGUEZ and approximately four other unidentified men standing in the driveway of 7038 W. 72nd Street, Chicago, Illinois near FERGUSON's Ford F150 truck. S/A Labno observed a grey BMW parked on the north side of 72nd Street opposite this address, bearing Illinois License plate V546644. S/A Villacis observed a GMC truck bearing Illinois license plate R800672 parked opposite the BMW.

37. S/A Edward Piacenza subsequently photographed the above listed firearms and ammunition. In addition, S/As Piacenza, Labno, Burney and Dent inventoried these firearms, ammunition and assorted items as evidence.

38. Subsequent to this undercover contact, Agents had the opportunity to review a CPD CLEAR Data Warehouse arrest photograph of "Jessie" DOMINGUEZ (Hispanic male, DOB: ▓▓▓▓▓▓▓▓▓▓). S/As Labno, Villacis and Ramos were all able to identify DOMINGUEZ as the man who sold Agents the guns as described above.

39. In addition, Agents had an opportunity to view an Illinois Secretary of State photograph of Terry FERGUSON, white male, DOB: ▓▓▓▓▓▓▓▓▓▓. S/As Labno, Villacis and Ramos were able to identify the driver of the F150 who provided the key to DOMINGUEZ and took the $10,000.00 ACF in the form of USC as FERGUSON.

40. S/As Labno and Villacis also had an opportunity to review an Illinois Secretary of State photograph of Timothy FERGUSON, white male, DOB: 09/03/1985. Agents were able to identify the man with the small child who greeted them in the driveway of 7029 W. 72nd Street, Chicago, Illinois as Timothy FERGUSON. S/A Labno should note that Timothy Ferguson has his Illinois Driver's License (F62281985251) listed at 7029 W. 72nd Street, Nottingham Park, Illinois.

41. S/A Labno should note that a computer records check of the Illinois Secretary of State revealed that the above described a 2002 black Lexus sedan, license plate Y802298 is registered to Jorge Rivera at 3116 W Fullerton Ave, Chicago, Illinois 60647.

42. A computer records check of the Illinois Secretary of State also revealed that the above described a 2008 BMW sedan, license plate V546644, is registered to Jacqueline Hernandez at 19608 Beechnut Drive, Mokena, Illinois 60448.

43. A computer records check of the Illinois Secretary of State also revealed that the above described 2002 GMC SUV, license plate R800672 is registered to Fredrick Shinstine at 7135 W. 74th Place, Nottingham Park, Illinois 60638.

Jesus DOMINGUEZ et al.
Case: 1:18-cr-00734 Document #: 325-1 Filed: 11/11/21 Page 8 of 8 PageID #:3067
772010-18-0005

44. A computer records check of the Illinois Secrete of State also revealed that the above described a 2013 Ford F150, license plate 1423262B is registered to Terry FERGUSON at 8143 Sunset Road, Willow brook, Illinois 60527.

45. A computer records check of the Illinois Secretary of State also revealed that the above described a 2013 Mercedes-Benz EXT Van, license plate 358203D is registered to Chicago's Finest Deli on Wheels at 8143 Sunset Road, Willow brook, Illinois 60527.

46. This is only a summary of this undercover contact, and reference should be made to the electronic surveillance evidence inventoried as evidence pursuant to this undercover contact for more information.

Attachments:

-ATF Property Summary Reports for firearms, ammunition and other property purchased from DOMINGUEZ and FERGUSON.

-Photographs of firearms, ammunition and other property purchased from DOMINGUEZ and FERGUSON.

-Photographs taken from disguised video and audio recording of the above described undercover transaction.