**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Investigation

| Title of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| Operation Sheriff of Nottingham | 772010-16-0005 | 75 |

## SUMMARY OF EVENT

Undercover trade of approximately (453) cartons of contraband cigarettes in exchange for (599) grams of cocaine.

## NARRATIVE:

1. **UNDERCOVER CONTACT:** On May 19, 2016, at approximately 16:40 hours, ATF Special Agents (S/A) Christopher J. Labno and Ricky Villacis, along with Chicago Police Department (CPD) Humberto Gutierrez, acting in an undercover capacity, met with Jesus "Jessie" DOMINGUEZ (Hispanic male, DOB: 03/02/1986, FBI: 123620FC4, SID: IIL48377920, CPD IR: 1309728 and Terry FERGUSON, white male, DOB:05/26/1964, FBI#: 925984AA1, SID#:IL23409850 and traded approximately (453) cartons of contraband cigarettes (38) cartons of Dark Horse cigarillos (1) carton is Swisher Sweet cigarillos and a case of rolling papers in exchange for approximately (599) grams of cocaine.

2. S/A Labno should note that this undercover transaction was previously arranged through recorded telephone calls and text messages between S/A Labno and DOMINGUEZ which are documented in a separate Report of Investigation (ROI). Prior to this undercover contact, both S/A Labno and S/A Villacis were equipped with disguised audio and video recording devices as well as an electronic transmitter. This report is based upon Agents' observations as well as a review of the electronic surveillance evidence associated with this transaction. S/A Labno should further note that the (453) cartons of contraband cigarettes were made up of cartons of Newport cigarettes with the cigarillos as described above—all cartons, packs and boxes failed to have the applicable Illinois and Cook County tax stamps affixed as required by law as none of the required Illinois or Cook County tax had been paid on these cigarettes.

3. On this same date, at approximately 15:29 hours, Agents drove southbound on Harlem, eastbound on 72nd place and then northbound on Nottingham. At approximately 15:31 hours, S/A Labno placed a recorded telephone call to DOMINGUEZ at (779) 456-9175. When DOMINGUEZ answered he advised that he and FERGUSON were on the Stevenson expressway at First Avenue. DOMINGUEZ advised that they would meet S/A Labno at the house on 73rd Street in a short period of time. The call then ended. As DOMINGUEZ and FERGUSON were not in the neighborhood, Agents decided to leave the area and return later.

4. At approximately 16:09 hours on this same date, Agents traveled northbound on Harlem to the area of 72nd

| Prepared by: Christopher J. Labno | Title: Special Agent, Chicago I Field Office | Signature: | Date: 12.23.16 |
|---|---|---|---|
| Authorized by: Bernard G. Hansen | Title: Group Supervisor, Chicago I Field Office | Signature: | Date: 12-30-16 |
| Second level reviewer (optional): Jeffery A. Magee | Title: Special Agent in Charge, Chicago Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

REPORTS_001-000903

Street. S/A Labno received an incoming call from DOMINGUEZ at (779) 456-9175. When DOMINGUEZ answered, S/A Labno advised that he was turning onto 72nd Street. DOMINGUEZ advised that he and FERGUSON would meet Agents "in front of the read house," a reference to 7028 West 73rd Place, Chicago, Illinois where Agents had conducted controlled purchases with DOMINGUEZ and FERGUSON in the past. The call then ended.

5. At approximately 16:10 hours, Agents drove eastbound on 72nd Street to Sayre and then south to 73rd Street, S/A Labno drove the undercover vehicle to the area in front of 7006 W. 73rd Street, Chicago, Illinois. Agents observed DOMINGUEZ on foot by this residence and FERGUSON then pulled up next to S/A Labno in a grey Ford F150 bearing Illinois License plate #1423262B. S/A Labno should note that this vehicle has been previously associated with FERGUSON during numerous controlled purchase. On this occasion, S/A Labno observed that FERGUSON was wearing a black t-shirt and sun glasses.

6. S/A Labno greeted FERGUSON and FERGUSON advised, "He's just getting a VIN." S/A Labno asked if they would be going to the other residence and FERGUSON replied, "Yeah the red house." FERGUSON continued, "He called me yesterday. I text him 'verify, verify!' Half's there but the guy gets out of work at four and he's on his way now. I told him hurry up I got people waiting. He's like yeah Terry no problem. So he's hurrying to get here. Right now he's (DOMINGUEZ) sitting on eleven (ounces) and the guy's bringing the nine (ounces) now." S/A Labno asked how long the men had to wait and FERGUSON responded, "He's on his way now. It's me talking not him (DOMINGUEZ). The guy gets off of work at four and as fast as traffic lets him get here."

7. FERGUSON then suggested that the men go to a local neighborhood casino and have a few beers while waiting for his "guy" to make it with the other none ounces of cocaine. S/A Labno then complained about the delays that were occurring relating to this transaction and FERGUSON replied, "It would have never been an issue," suggesting that the problem was that DOMINGUEZ had not verified the transaction on the previous day with FERGUSON. FERGUSON explained, "You don't want that around if it's not for sure." At this point, DOMINGUEZ walked up to the discussion next to the two vehicles. FERGUSON then told DOMINGUEZ, "Why don't you go with him and take what you got and I'll be over there." S/A Labno, FERGUSON and DOMINGUEZ then discussed the quality of the cigarettes S/A Labno had for sale with FERGUSON indicating that it wouldn't be a problem.

8. At approximately 16:17 hours S/A Labno observed DOMINGUEZ enter the front passenger side of FERGUSON's truck. DOMINGUEZ advised "Okay, were gonna go grab something and we'll meet you at the red house." Agents observed FERGUSON drive north on Sayre out of their view and Agents drove away.

9. At approximately 16:18 hours Agents arrived at 7028 W. 73rd Place, a red frame single family residence on the north-side of 73rd Place. S/A Labno then backed the undercover vehicle into the driveway of this residence. At approximately 16:20 hours, S/A Labno observed DOMINGUEZ arrive at the above described residence in his mini-van bearing Illinois passenger plate Q206935. DOMINGUEZ also backed into the drive and exited the van.

10. At approximately 16:21 hours, S/A Labno followed DOMINGUEZ into the residence. DOMINGUEZ told S/A Labno, "I might have you, next month when you get something, just doing it with him." DOMINGUEZ explained that he would be serving some amount of jail time due to a pending charge of driving on a revoked license. DOMINGUEZ then handed S/A Labno a clear plastic zip-loc bag containing (11) clear plastic bags each containing approximately 29 grams of a white chunky substance—suspect cocaine. S/A Labno inspected

the cocaine and then handed it back to DOMINGUEZ saying, "Need nine more." DOMINGUEZ responded, "I know my bad bro. It's just he was calling me and no one was getting ahold of me." DOMINGUEZ then complained, "The dude's who take this stuff are waiting on me too." S/A Labno questioned DOMINGUEZ about FERGUSON needing to get the cocaine from another supplier. S/A Labno told DOMINGUEZ, "I thought your guy was right on." DOMINGUEZ responded, "Yeah, he is but he don't keep it." S/A Labno asked, "Oh, he keeps it at his guy's house?" DOMINGUEZ responded, "Yeah." DOMINGUEZ then showed S/A Labno several text messages on his (DOMINGUEZ's) cellular telephone in which a number associated with FERGUSON (708) 705-4063 was texting DOMINGUEZ regarding the proposed cigarette for cocaine transaction.

11. The conversation then turned to cigarettes as S/A Labno and DOMINGUEZ exited the above described residence. DOMINGUEZ asked S/A Labno, "What's the situation with these? They all Newports?" S/A Labno explained that there were approximately (453) cartons of Newport Cigarettes, a case of rolling papers and (38) cartons of cigarillos. S/A Labno and DOMINGUEZ continued to discuss the cigarettes, S/A Labno suggested that FERGUSON should come and take a look at the cigarettes if there had been complaints about the freshness of the cigarettes and DOMINGUEZ advised "It's not really so much him, it's his guy who cries about it."

12. At this point, S/A Labno displayed the above described cigarettes to DOMINGUEZ in the back of the undercover vehicle. S/A Labno and DOMINGUEZ then discussed that the dates on the cigarette case boxes where different than the actual dates of production. S/A Labno explained that he would not give anyone boxes with the correct date codes and other numbers as he (S/A Labno) did not want the items traced. DOMINGUEZ stated that he understood saying, "If somebody gets popped off they can't be traced." DOMINGUEZ then asked, "They got the stamp?" S/A Labno replied, "The ones you looked at got Missouri stamps. Like I told your guy (FERGUSON) they're still illegal 'cause they don't have the Illinois Stamp or the cook county stamp. That's why you save the money." DOMINGUEZ then discussed that the individual he and FERGUSON were selling the cigarettes to had gas stations in Orland Park where this individual retailed the cigarettes. DOMINGUEZ did not know exactly where the gas stations were only how to get to them and that they were located at 159th Street, possibly near LaGrange.

13. The conversation then turned to waiting for the cocaine. DOMINGUEZ complained that FERGUSON was waiting on his (FERGUSON's) son to come home so he (FERGUSON) could get the cocaine. Specifically, DOMINGUEZ quoted FERGUSON as saying, "I just can't have all that shit sitting here by my brother's house 'cause I got a lot to lose." DOMINGUEZ complained that he had been at FERGUSON's residence for much of the day working on ATVs and other items. DOMINGUEZ complained that he finally asked FERGUSON "When your son bringing this shit or what?" S/A Labno asked DOMINGUEZ if they were waiting on FERGUSON's son and if so did his son work? DOMINGUEZ responded, "His son's the director of an insurance company. He's in charge of the fraud department. Say you're trying to do a bogus claim—he's like the detective for that insurance company."

14. At approximately 16:37 hours, S/A Labno observed DOMINGUEZ place a telephone call to FERGUSON and discuss the estimated time of arrival of the cocaine. S/A Labno then complained about having to wait longer for the cocaine. DOMINGUEZ explained that he really wanted S/A Labno to stay and wait for the cocaine to arrive. S/A Labno then asked DOMINGUEZ why the transaction needed to happen this same day. S/A Labno advised that if the cocaine belonged to FERGUSON they could do the transaction any day. DOMINGUEZ advised, "It's just that I already gave him the money for this (DOMINGUEZ indicated the clear plastic bag containing 11 separate ounces of suspect cocaine) and I ordered it so I'm gonna have to put up. If something happens to it I'm out all that dough."

Case: 1:18-cr-00734 Document #: 325-6 Filed: 11/11/21 Page 4 of 8 PageID #:3096

| Title of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| Operation Sheriff of Nottingham | 77206-0005 | 75 |

15. At approximately 16:48 hours, S/A Labno observed DOMINGUEZ dial a number on his (DOMINGUEZ's) cellular telephone and DOMINGUEZ provided S/A Labno with this telephone. S/A Labno observed that the number dialed was (708) 705-4063. When FERGUSON answered S/A Labno recognized his voice and told FERGUSON that he (S/A Labno) had to get going. FERGUSON advised that he did not want S/A Labno to leave and advised that the cocaine would arrive in approximately twenty minutes. FERGUSON told S/A Labno, "Please do me a personal favor," and asked that S/A Labno wait. FERGUSON advised that he would be down to S/A Labno's location in a short time. The call then ended.

16. At approximately 16:53 hours, Agents observed FERGUSON drive up to the above described residence in his grey Ford pick-up truck. S/A Labno observed FERGUSON park this truck on the north side of the street and walk toward DOMINGUEZ and Agents. FERGUSON approached S/A Labno and showed him a photograph of traffic which appeared to be the I-355 expressway. FERGUSON stated, "He text me a picture. 'Sitting in traffic on 355—forty-five to sixty minutes.' He sent me that text twenty minutes ago." S/A Labno observed that the contact banner over this picture text labeled this contact as T____. S/A Labno, FERGUSON and DOMINGUEZ briefly discussed S/A Labno coming back in the morning to conduct the transaction

17. The conversation turned to firearms with S/A Labno explaining that he had made a lot of money off of the many firearms he had bought from FERGUSON and DOMINGUEZ when they had first started doing business. S/A Labno discussed that he would accessorize and customize guns and then re-sell them for profit. S/A Labno advised that he was currently looking for two to three firearms. FERGUSON asked, "You got any more North Face." S/A Labno asked FERGUSON why he would want North Face coats when it was a hundred degrees out. FERGUSON replied "Still, stock up. How much you got?" S/A Labno advised that he would have to look and see.

18. The conversation then turned back to the cocaine with FERGUSON advising that the guy he was waiting on was his "regular connect." At approximately 16:58 hours, FERGUSON then showed S/A Labno his (FERGUSON's) cellular telephone on which he (FERGUSON) displayed text messages between FERGUSON and DOMINGUEZ showing that FERGUSON had tried to confirm this controlled purchase with DOMINGUEZ. DOMINGUEZ lamented that S/A Labno probably was upset as this was the second time DOMINGUEZ had S/A Labno waiting, describing a previous transaction where DOMINGUEZ had tried to assist S/A Labno in selling stolen catalytic converters. DOMINGUEZ described the scenario and FERGUSON responded, "Why didn't you call me?" DOMINGUEZ advised, "That's all the way up in Rockford." FERGUSON responded, "Charlie would have come here, man." DOMINGUEZ and FERGUSON briefly discussed a past law enforcement sting operation involving Gomez Recycling, and explained that a new law required that a person have a scrap and salvage license to buy used catalytic converters.

19. The conversation then turned to waiting for cocaine and S/A Labno suggested that the men "hook me up" with regard to firearms in order to make up for the wait. FERGUSON responded, "I think we can. I think you'll be real happy. Just three though?" S/A Labno responded, "I can take whatever. I just got a customer for three now. I could do three, eight, or twenty. You saw I was good for the money on the others." FERGUSON responded, "Yeah, I know." DOMINGUEZ agreed saying, "Yeah, I was just checking to see if they were good."

20. At approximately 17:04 hours, FERGUSON began using his cellular telephone to show S/A Labno videos of his (FERGUSON's) son competing in an Ultimate Fighting Champion (UFC) striking contest. FERGUSON, DOMINGUEZ and S/A Labno briefly discussed FERGUSON's son. DOMINGUEZ then advised that FERGUSON had represented several reality television stars and other minor celebrities. "Do you know Joey

Case: 1:18-cr-00734 Document #: 325-6 Filed: 11/11/21 Page 5 of 8 PageID #:3097

| Title of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| Operation Sheriff of Nottingham | 7720⬛6-0005 | 75 |

from the Real Life Chicago? He's his manager. They filmed a Red Bull commercial in his driveway with Dennis Rodman." FERGUSON then took a telephone call and advised another individual where he (FERGUSON) was. FERGUSON stated, "Come to the red house on Metlow's block. Near the back road, you'll see my truck. 73rd Place." FERGUSON subsequently explained, "That's my brother-in-law. He owes me money. He's brining me some money."

21. S/A Labno then asked FERGUSON, "You got a lot of houses?" FERGUSON replied, "Yeah, I got about 30. Want to buy one?" S/A Labno advised that he was not interested and that he wanted to buy an apartment building. FERGUSON responded, "Ugghh! Trust me you want houses. I've been doing this for thirty years." S/A Labno asked FERGUSON, "That's the way you go legit?" FERGUSON responded, "Yeah." S/A Labno continued, "So there's no way you can lose because you do this (sell cocaine) on the side?" FERGUSON responded, "Yeah, there's no way you can miss if you're on point."

22. FERGUSON then used his cellular telephone to show S/A Labno and the other Agents photographs of several celebrities. FERGUSON narrated the photographs saying, "That's Dr. Drew. Bringing Dennis Rodman to do Celebrity Rehab three. That's Joey from the Real World. That's Ashley from the Bad Girls Club. That's him doing the Playgirl Magazine. I got a sex tape of those two out." At approximately 17:07 hours, S/A Labno observed FERGUSON receive an incoming cellular telephone call and walk to a black Lincoln Town car with Illinois License plates which parked on the north side of 73rd Place just east of the drive way of 7028 W. 73rd Place, Chicago, Illinois. FERGUSON spoke briefly to the driver of this vehicle and then returned to Agents and DOMINGUEZ. Upon his return, FERGUSON again showed S/A Labno several photographs on his cellular telephone. FERGUSON explained these photographs as pictures of him (FERGUSON) at "the Academy Awards—the Oscar's." FERGUSON stated, I'm fucking VIP wherever we go."

23. At this point, S/A Labno asked FERGUSON if he was a celebrity manager in addition to all the houses he owned. FERGUSON responded, Well, plus I own KM and F Properties, the (unintelligible) Properties, Chicago's Finest Deli on Wheels, Chicago's Finest Escort Service." S/A Labno then asked FERGUSON, "You own an escort service? FERGUSON responded, "Yeah a good one. I don't advertise. You gotta know somebody to know somebody to get one sent to you. But they're top of the line." DOMINGUEZ asked S/A Labno if he liked to gamble. FERGUSON advised, "I also own a betting website on-line. It's off-shore but you call an 888 number and I give you a BL number. You check in on line and you can play the slot in the casino, black jack." FERGUSON then suggested that he really did not deal in cocaine much and was only conducting this transaction for DOMINGUEZ. S/A Labno advised FERGUSON that he had the twelve ounces last time and snapped his finger for emphasis. FERGUSON responded that it "wouldn't have been an issue. It's really not an issue."

24. At approximately 17:10 hours, S/A Labno observed FERGUSON receive an incoming text message and FERGUSON reported that his cocaine source had advised that traffic had freed up." FERGUSON then asked S/A Labno about himself asking, "You got a house now? What do you invest your money in?" FERGUSON continued, "I see how you keep rolling. I pay attention a little bit. How you do all the North Faces and shit." S/A Labno replied, "Yeah, I know people like with the beer and the Vodka and shit. Everybody plays their angle." FERGUSON then offered to sell S/A Labno some large lots of clothing for "twelve cents on the dollar." S/A Labno then asked FERGUSON if he was interested in more North Face gear and FERGUSON responded, "Yeah, I'll take 'em all. (I'll) buy 'em all!"

25. The conversation then turned to cigarettes. DOMINGUEZ asked, "Say you start bringing cigarettes that don't have the stamp at all? How do we . . .? S/A Labno advised that the men might have to obtain a stamping

machine. DOMINGUEZ asked "How do you get one?" and S/A Labno replied that "You gotta find a guy who counterfeits the stamps." FERGUSON interjected, "I don't understand. Why does anybody care about the stamp?" DOMINGUEZ responded, "If they catch you with a stamp for a different State it's a ticket. If they catch you with ones without a stamp that's Federal." FERGUSON responded saying, "It can't be federal to you. 'Cause the cigarettes is like money. Money, like counterfeit money—it's our way of life. It's passed around so they can never tell where it comes from." S/A Labno advised that the stamps were more of a concern if someone was selling the unstamped cigarettes out of a store. FERGUSON responded, "Oh, if you're selling it from a store. I got you."

26. The conversation then turned to firearms. S/A Labno suggested that FERGUSON look into obtaining S/A Labno more firearms since he (FERGUSON) was making S/A Labno wait for the cocaine. FERGUSON responded, "He's the one. I know he does. As soon as he says 'come' I'll run and grab it and talk to him about it. I know he does—he shows me all the time. That's how I know." S/A Labno asked about the quality of the guns saying, "He got good stuff?" FERGUSON responded, "Yeah, real good stuff. The stuff you got last time is nothing. Yeah, he collects this shit." S/A Labno, DOMINGUEZ and FERGUSON then discussed S/A Labno making money selling guns with S/A Labno explaining that you had to take the firearms and sell them in a better market. DOMINGUEZ responded, "Yeah, this market sucks. Although, you'd thisnk they would be paying whatever the way the murder rate is."

27. At approximately 17:16 hours S/A Labno observed FERGUSON receive an incoming text message. FERGUSON reported that his cocaine source was twenty minutes away. S/A Labno responded, "Please tell me you're not going to have to chop it up." FERGUSON replied, "No, I don't touch it. Just bam bam, you're gonna be fine." DOMINGUEZ advised, "That's why last time it was off it was weird." FERGUSON stated, "Cause never ever have I heard that before." S/A Labno explained that he thought that the scale he had been using last time was off. FERGUSON replied, "I thought it was. I didn't want to ruin it for him." FERGUSON continued, "No, always on point, always. That's why when you said that I was like 'what?' There's no way like I said it's not worth the bullshit." S/A Labno asked if FERGUSON's source was good. FERGUSON replied, "Never ever let me down."

28. At approximately 17:18 hours, S/A Labno observed FERGUSON receive an incoming cellular telephone call. FERGUSON told the caller, "Okay, yeah. I'll be right there." FERGUSON then ended the telephone call and told S/A Labno, "Okay, I'm gonna go 'cause I gotta go like two miles over to meet him so this way I can come right back. He said twenty minutes so I'll be sitting in his driveway." At approximately 17:19 hours, Agents observed FERGUSON leave the area in his grey Ford pick-up truck.

29. S/A Labno then told DOMINGUEZ that he was going to get the (11) ounces of cocaine and S/A Labno walked into the residence and retrieved the bag containing the cocaine which was described above. S/A Labno returned to the undercover vehicle and provided S/A Villacis with the approximately (11) ounces of cocaine. S/A Labno and DOMINGUEZ then continued their conversation. S/A Labno told DOMINGUEZ that he understood that FERGUSON was getting the cocaine from his son. DOMINGUEZ stated that he was confused as well and stated that "He calls everyone his son. Sometimes I don't know if he's for real or . . . the guy has a lot of kids." DOMINGUEZ and S/A Labno then discussed FERGUSON selling DOMINGUEZ's stolen goods as well as how hard it was to steal cigarettes as most loads were now GPS tracked.

30. At approximately 17:33 hours, S/A Labno observed DOMINGUEZ call FERGUSON on his (DOMINGUEZ's) cellular telephone. DOMINGUEZ reported "He's gonna be on his way in two minutes. He's at his house now." DOMINGUEZ then related that when he was growing up FERGUSON used to make runs to El Paso,


Texas to pick up large loads of cocaine, two hundred kilograms at a time. DOMINGUEZ advised that FERGUSON had gotten caught and had done five years in jail and had begun using drug suppliers. DOMINGUEZ stated, "That's why he got good plugs like that." S/A Labno told DOMINGUEZ that he had thought that FERGUSON regularly sold kilogram quantities of cocaine. DOMINGUEZ responded, "He does, now he gets them from someone else—before he was the man." At approximately 17:42 hours S/A Labno observed DOMINGUEZ receive an incoming text. DOMINGUEZ then showed this text message to S/A Labno who recognized that it was from FERGUSON. In the text FERGUSON told DOMINGUEZ "leaving now to head back." DOMINGUEZ and S/A Labno then continued to talk about FERGUSON and his trips to Clearwater, Florida with a man who "owned one of the biggest pharmaceutical companies."

31. At approximately 17:43 hours, DOMINGUEZ received a text message from FERGUSON and showed S/A Labno. DOMINGUEZ stated, "He's two street lights away." At approximately 17:57 hours, S/A Labno told S/A Villacis and Officer Gutierrez to unload half of the cigarettes into DOMINGUEZ's mini-van. DOMINGUEZ and S/A Labno supervised the unloading and loading of approximately (240) cartons of Newport cigarettes, (1) box of Swisher Sweets cigarillos and (1) case of rolling papers into DOMINGUEZ's van.

32. At approximately 17:53 hours, DOMINGUEZ used his cellular telephone to call FERGUSON. DOMINGUEZ handed S/A Labno the telephone and FERGUSON explained to S/A Labno that he was at 79th and Harlem Avenue waiting for his son. FERGUSON told S/A Labno that he was unwilling to ride with the cocaine in his (FERGUSON's) vehicle and instead had his son following him (FERGUSON) with the cocaine in his (FERGUSON's son's) vehicle. S/A Labno advised that he understood and the telephone call ended. S/A Labno returned the cellular telephone to DOMINGUEZ. A short time later DOMINGUEZ received a telephone call and walked away from Agents.

33. At approximately 18:00 hours, S/A Labno observed DOMINGUEZ place a telephone call to FERGUSON. After a short conversation, DOMINGUEZ ended the telephone call and told S/A Labno "He just pulled into his brother's house. He's three blocks away so he's right over here with it." S/A Labno should note that DOMINGUEZ pointed in the direction of 7028 W. 72nd Street, Chicago, Illinois. DOMINGUEZ continued, "He's probably getting it from his son 'cause his son don't want to meet nobody."

34. At approximately 18:02 hours, S/A Labno observed DOMINGUEZ place a cellular telephone call to FERGUSON. S/A Labno suggested that Agents drive to this other residence to pick up the cocaine. DOMINGUEZ advised "He won't want nobody going over there. He's just particular about shit."

35. At approximately 18:15 hours, S/A Labno told DOMINGUEZ that he was leaving. DOMINGUEZ asked if S/A Labno wanted DOMINGUEZ to call FERGUSON. S/A Labno agreed and observed DOMINGUEZ place a call to FERGUSON. DOMINGUEZ then handed S/A Labno the telephone. S/A Labno and FERGUSON had a brief conversation during which S/A Labno asked FERGUSON if he (FERGUSON) wanted Agents to drive to his other house to come and get the cocaine. FERGUSON told S/A Labno, "No, stay right there. S/A Labno then advised that he would stay on the telephone with FERGUSON as he came back to 73rd Place with the cocaine. FERGUSON then advised, "Tell Jessie to get down here and he can bring it to you." S/A Labno gave the message to DOMINGUEZ. DOMINGUEZ told S/A Labno to continue holding his (DOMINGUEZ's) cellular telephone and to "Hold onto my phone I'll be right back." The call with FERGUSON then ended. Agents observed DOMINGUEZ exit the driveway in his mini-van and drive out of sight.

36. S/As Labno and Villacis then examined DOMINGUEZ's cellular telephone and S/A Villacis took several

ATF EF 3120.2 (10-2004)
For Official Use Only

REPORTS_001-000909

| Title of Investigation: Operation Sheriff of Nottingham | | Investigation Number: 7720■■6-0005 | Report Number: 75 |
|---|---|---|---|

photographs of this cellular telephone to document their observations.

37. At approximately 18:26 hours, Agents observed FERGUSON and DOMINGUEZ drive westbound on 73rd Place and park blocking the driveway of 7028 W. 73rd Place, Chicago, Illinois. Agents observed DOMINGUEZ exit the front passenger side door of this vehicle and walk toward Agents. S/A Labno then followed DOMINGUEZ into 7028 W. 73rd Place. As S/A Labno walked he told S/A Villacis and Officer Gutierrez to unload the rest of the cigarettes for DOMINGUEZ. Once inside the residence, DOMINGUEZ gave S/A Labno another clear plastic zip-loc bag containing (9) smaller clear plastic bags each containing approximately (29) grams of a white chucky substance—suspect cocaine. DOMINGUEZ repeatedly apologized for the delay and advised that future transactions would go much more smoothly. S/A Labno asked DOMINGUEZ for FERGUSON's cellular telephone number and DOMINGUEZ advised that he would need to make sure it was okay with FERGUSON. DOMINGUEZ advised that FERGUSON had some guns that he was looking at for S/A Labno and that FERGUSON would tell him (S/A Labno) about them.

38. At approximately 18:30 hours, S/A Labno and DOMINGUEZ exited the house and observed that S/A Villacis and Officer Gutiérrez had unloaded the rest of the Newport cigarettes and the Dark Horse cigarillos. S/A Labno then provided S/A Villacis with the additional (9) ounces of suspect cocaine. S/A Labno followed DOMINGUEZ to FERGUSON's truck and ounce there observed DOMINGUEZ ask FERGUSON if he could give S/A Labno his number. FERGUSON provided his telephone number as (708) 705-4063. FERGUSON told S/A Labno next time this is gonna be quick. He showed me two he has right now, a .38 and another." S/A Labno asked about prices and FERGUSON told S/A Labno, I'll have him (DOMINGUEZ) let you know as soon as I get them."

39. At approximately 18:31 hours, SA Labno returned to his undercover vehicle and he, S/A Villacis and Officer Gutierrez left the area in their undercover vehicle.

40. S/As Labno and Burney subsequently photographed and inventoried the above described approximately (599) grams of suspect cocaine. Agents then used a SIRCHIE Mark Cocaine ID Swipe field test kit to test the above described suspect cocaine; this test kit indicated positive for the presence of cocaine.

41. S/A Labno should note that his disguised audio and video recording device ran out of recordable memory at approximately 18:16 hours. S/A Labno should note that the disguised recording device installed on S/A Villacis function throughout this undercover contact and was deactivated after Agents left the area in their undercover vehicle.

42. This is only a summary of this undercover contact, and reference should be made to the electronic surveillance evidence inventoried as evidence pursuant to this undercover contact for more information.

ATF EF 3120.2 (10-2004)
For Official Use Only

REPORTS_001-000910