**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Investigation

| Title of Investigation: Operation Sheriff of Nottingham | Investigation Number: 772010-16-0005 | Report Number: 84 |
|---|---|---|

## SUMMARY OF EVENT

Undercover trade of approximately (233) pieces of "prop" merchandise in exchange for approximately (124) grams of cocaine.

## NARRATIVE:

1. **UNDERCOVER CONTACT:** On December 7, 2016, at approximately 12:21 hours, ATF Special Agent (S/A) Christopher J. Labno and Chicago Police Department (CPD) Humberto Gutierrez, acting in an undercover capacity, met with Terry FERGUSON, white male, DOB: 05/26/1964, FBI#: 925984AA1, SID#:IL23409850 and William WALSH, white male, DOB: 04/08/1955, FBI#: 394503K1, SID#: IN01800713, and traded approximately (233) pieces of "prop" clothing for approximately (124) grams of cocaine.

2. S/A Labno should note that this undercover transaction was previously arranged through recorded telephone calls and text messages between S/A Labno and FERGUSON which are documented in a separate Report of Investigation (ROI). Prior to this undercover contact, S/A Labno was equipped with a disguised audio and video recording devices as well as an electronic transmitter. This report is based upon Agents' observations as well as a review of the electronic surveillance evidence associated with this transaction. S/A Labno should further note that the (233) pieces of "prop" clothing consisted of approximately (132) North Face backpacks and (101) North Face Denali fleece jackets.

3. On this same date, at approximately 12:21 hours, Agents drove eastbound on 72nd Street Chicago, Illinois. Agents then drove to 7038 W. 72nd Street, Chicago, Illinois. Officer Gutierrez observed that FERGUSON's Ford F150 bearing Illinois license plate 1423262B was parked in the driveway of this residence. S/A Labno also observed that a KIA Sport Utility Vehicle (SUV) bearing Illinois license plate Q235240 was also parked in this driveway. S/A Labno addressed a white male standing on the porch of this residence (now identified as Thomas HOGAN, white male, DOB:03/19/1962, FBI#:61986FA0, SID:IL47005590) and HOGAN advised "hold on one minute."

4. At approximately 12:23 hours, Agents observed FERGUSON walk from the rear of this residence to their undercover vehicle. FERGUSON greeted Agents and asked "You got it all in there?" S/A Labno advised that the clothing and backpacks were all in the undercover vehicle. S/A Labno exited the vehicle and opened the

| Prepared by: Christopher J. Labno | Title: Special Agent, Chicago I Field Office | Signature: | Date: 1-8-17 |
|---|---|---|---|
| Authorized by: Bernard G. Hansen | Title: Group Supervisor, Chicago I Field Office | Signature: | Date: 1-15-17 |
| Second level reviewer (optional): Jeffery A. Magee | Title: Special Agent in Charge, Chicago Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

REPORTS_001-001017

rear lift-gate so that FERGUSON could inspect the items. S/A Labno and FERGUSON briefly discussed the North Face items. FERGUSON then advised, "Okay, give me a second—you got here so fast." S/A Labno observed FERGUSON walk toward the garage and then return to S/A Labno. FERGUSON then asked, "What I'll do is three and you got one right? S/A Labno advised that he wanted three and a half ounces for the prop merchandise and expected to pay for an additional half ounce of cocaine. FERGUSON and S/A Labno then did some brief calculations and FERGUSON then told S/A Labno, "I guess you're right there . . . all right." At approximately 12:25 hours, Agents observed FERGUSON walk into the above described residence.

5. Agents then waited in their undercover vehicle for FERGUSON to return. As they waited, Officer Gutierrez noted a large Recreational Vehicle (RV) parked behind a yellow box truck on the driveway. At approximately 12:30 hours, Agents observed FERGUSON walk to the rear of the residence by the detached garage along with an older white male in his late forties or early fifties wearing a grey sweatshirt. This white male is now identified as William WALSH, white male, DOB:04/08/1955, FBI#:394503K1, SID#:IN01800713. At approximately 12:31 hours, Agents observed FERGUSON walk to his grey pick-up and indicate that Agents should pull their undercover vehicle into the drive as he pulled out and parked the Ford pick-up in the driveway of 7029 W. 72nd Street, Chicago, Illinois.

6. Agents then exited their undercover vehicle and observed WALSH unloading tools and other items from the rear of the yellow box truck. WALSH greeted S/A Labno, "What's up bro?" and S/A Labno, Officer Gutierrez and WALSH then began taking the North Face prop merchandise out of the undercover vehicle and placing it into the yellow box truck. As WALSH loaded the items, FERGUSON directed WALSH where to stack the items in the truck. FERGUSON then asked how long Officer Gutierrez had worked for S/A Labno and S/A Labno replied, "Too long." FERGUSON laughed and stated, "You want to meet my Mexican? Everybody has to have a good Mexican."

7. FERGUSON and S/A Labno then began to discuss what stolen items FERGUSON had and FERGUSON advised that he had Bluetooth headsets, iPhone chargers and other items. S/a Labno also asked FERGUSON if he (FERGUSON) still had the garage full of Frigidaire appliances. FERGUSON responded, "Yeah, they're still there. I haven't even tried." The conversation then turned to DOMINGUEZ, with FERGUSON advising S/A Labno that DOMINGUEZ was not doing well in jail; "He's not doing good in there. . . His mom, she says he's skinnier than me."

8. As Agents and WALSH finished loading the North Face items, WALSH turned to S/A Labno and stated, "Want to come with me? Want to come with me to the back?" S/A Labno turned to FERGUSON and asked FERGUSON, "He's got it?" FERGUSON replied "Yeah." S/A Labno then followed WALSH to the rear of the residence and into the garage. Once in the garage at approximately 12:35 hours, WALSH said, "He said you got five hundred for me." S/A Labno agreed and WALSH handed S/A Labno a clear plastic bag containing four smaller plastic bags each containing a chunky off white substance—suspect cocaine. S/A Labno should note that these bags contained an approximate total of (124) grams of the suspect cocaine. S/A Labno then handed WALSH $500.00 in Agent Cashier Funds (ACF) in the form of United States Currency (USC) and watched as WALSH counted the money.

9. S/A Labno then walked back to the front of the residence and rejoined FERGUSON and Officer Gutierrez. S/A Labno provided the above described suspect cocaine to Officer Gutierrez to secrete in the undercover vehicle. S/A Labno and FERGUSON then briefly discussed conducting a cigarette for cocaine transaction prior to the Christmas holiday. Officer Gutierrez asked FERGUSON if he could look at the RV parked in the driveway and FERGUSON offered to show Agents the RV. FERGUSON explained, "You can use it whenever you want.

It's a brand new 2007." S/A Labno asked FERGUSON how much he had paid and FERGUSON stated, "$118,000, it does everything. You should see the inside, walnut floors and everything."

10. As they walked back to the RV FERGUSON told S/A Labno, "Yeah, you're all good. There's no need to even talk." S/A Labno advised that he wanted to make sure FERGUSON was "on point," explaining that the last time FERGUSON had S/A Labno waiting for hours. FERGUSON replied, "That had nothing to do with me."

11. At approximately 12:37 hours, FERGUSON opened the RV and showed Agents the interior. FERGUSON explained that he had purchased it so that he could rent it out to friends and family. At approximately 12:38 hours, S/A Labno observed FERGUSON receive an incoming call on his cellular telephone and tell the caller "Pat, I'll call you right back." S/A Labno asked FERGUSON how much he would rent it for and FERGUSON responded, "Depends on who you are, but it's roughly a couple hundred bucks a day." FERGUSON then explained that if S/A Labno or he had a big order to pick up it made financial sense to use the RV. Specifically, FERGUSON stated, "If you got a big order to pick up somewhere . . . just add up hotel fees alone." S/A Labno asked if there was a cargo area and FERGUSON responded, "Yeah, all underneath." S/A Labno asked, "So you can make runs or whatever?" FERGUSON stated, "Whatever you want its got a lot of cargo space." S/A Labno advised that no one would suspect that a family driving an RV would be transporting contraband and FERGUSON agreed saying, "like that movie!"

12. Agents and FERGUSON then exited the RV and walked to the back to look at the cargo area. S/A Labno noted that the RV had an Illinois license plate 391937RV. S/A Labno asked FERGUSON if he had leased the RV or bought it and FERGUSON stated, "No, no, I bought it." S/A Labno pointed out a sticker on the back of the RV which read "Campland, Burns Harbor, Indiana." S/A Labno asked if that was where he parked the RV and FERGUSON stated "No, that's where I bought it."

13. Agents and FERGUSON then walked to the front of the residence and Officer Gutierrez got into the undercover vehicle. FERGUSON then explained that he was taking care of his brother Dirk FERGUSON who was handicapped from a motorcycle accident thirty four years ago. FERGUSON explained that he kept his brother in the family residence (7038 W 72nd Street) with "two guys." FERGUSON explained, "That's why I hustle—everything's for him." FERGUSON explained that he had recently discovered that a nursing home was abusing his brother and that he (FERGUSON) was now trying to "build him back up, letting him eat whatever he wants, giving him Ensures, sending girls to give him a blow-job—whatever, you know. Keep him going."

14. FERGUSON continued, saying "I put my son in the house over here to make sure he keeps his eye on him (FERGUSON pointed to 7029 W. 72nd Street) but I had to put someone in twenty-four hours a day." FERGUSON explained, "That's why everything I do I gotta be legit about, one way or the other. You understand?"

15. The conversation then turned to cigarettes with S/A Labno telling FERGUSON "I pay for the smokes with the other stuff (cocaine) right, so it's more advantageous for me to trade." FERGUSON replied, "Nothing's a problem, you just let me know." S/A Labno responded, "I'm thinking five hundred cartons and we'll do it just like we did last time." FERGUSON responded, "Call me. Just give me one day notice." S/A Labno agreed and told FERGUSON that he (FERGUSON) was "my guy." FERGUSON responded, "Just hit me, we'll talk about getting you that house." S/A Labno then briefly discussed the residence in Gary which FERGUSON had previously offered to sell S/A Labno.

16. At approximately 12:46 hours, the conversation ended and Agents left the area in their undercover vehicle.

17. S/As Burney subsequently photographed and inventoried the above described (124) grams of suspect cocaine. Agents then used a SIRCHIE Mark Cocaine ID Swipe field test kit to test the above described suspect cocaine; this test kit indicated positive for the presence of cocaine.

18. S/A Labno should note that a computer records check of the Illinois Secretary of State revealed that Illinois License plate Q235240 is listed as a 2004 Hyundai Santa Fe registered to Michael Cooper at 520 S. Green Street, Piper City, Illinois 60959.

19. S/A Labno should note that a computer records check of the Illinois Secretary of State revealed that Illinois License plate 391937RV is listed as a 2016 Ford Motor Home registered to Terry and Cherie FERGUSON at 8143 Sunset Road, Willowbrook, IL 60527.

20. S/A Labno should note that subsequent to this undercover transaction, he was able to review Illinois Secretary of State and Chicago Police Department (CPD) arrest photographs of WALSH and Thomas HOGAN, white male, DOB: 03/19/1962, CPD IR#: 1414307. S/A Labno was then able to identify HOGAN as the white male who had told Agents to wait for FERGUSON and WALSH as the white male who helped unload and load the North Face Merchandise as well as the individual who delivered S/A Labno the (124) g of suspect cocaine.

21. This is only a summary of this undercover contact, and reference should be made to the electronic surveillance evidence inventoried as evidence pursuant to this undercover contact for more information.