UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No 18 CR 734 |
| vs. | ) | Hon. Matthew F. Kennelly |
| | ) | |
| | ) | |
| TERRY FERGUSON | ) | |

**MOTION TO VACATE JUDGMENT**

COMES NOW the defendant, TERRY FERGUSON, by and through his attorney, Beau B. Brindley, and respectfully moves this Honorable Court to vacate the judgment against him and hold a hearing to properly advise Mr. Ferguson about a potential conflict of interest before resentencing.[1] In support, he states as follows:

**Introduction**

As the Court is aware, Mr. Ferguson was sentenced on October 20, 2023, following a contested and contentious sentencing hearing. Even before that hearing, Mr. Ferguson, the Court, and all of the attorneys were aware that ATF Agent Chris Labno, upon originally arresting Mr. Ferguson in this case in 2018, began to question him about the undersigned and potential involvement in alleged criminal activity. However, during Agent Labno's testimony on October 20, 2023, he testified that his questioning of Mr. Ferguson about the undersigned was done pursuant to a DOJ-approved investigation of the undersigned. 10/20/23 Tr. at 331. While the government was plainly aware of this investigation, up until that point neither the undersigned nor Mr. Ferguson was aware that Agent Labno's actions had been part of a broader DOJ-approved

---

[1] Mr. Ferguson could be compelled to try to make this motion himself under §2255. However, given the very discrete basis here, and the law involved, the matter can be filed by counsel so as to ensure the necessary conflict colloquy takes place.

1

investigation rather than something he did of his own initiative. In the context of this case, where Agent Labno repeatedly took dishonest actions and cut corners, as has been explicitly found by the Court, that is a very meaningful distinction. Yet, despite it coming to the light for the first time that the same Department of Justice that was prosecuting Mr. Ferguson had also decided to investigate the very attorney who was representing him in that prosecution, the sentencing hearing continued uninterrupted after this revelation. Mr. Ferguson was not advised of any potential for a conflict of interest between himself and his attorney. He was not given the opportunity to consult with independent, conflict-free counsel. He was not even given the opportunity to think about the revelation whatsoever before final arguments were presented to the Court by the very same potentially-conflicted counsel and sentence was imposed. In the moment, he undersigned did not think to raise the issue. Nor did the Court.

Mr. Ferguson, having reviewed the sentencing transcript, now recognizes that there might be a potential or actual conflict of interest that became manifest during his sentencing hearing. Before Agent Labno's testimony, the undersigned attorney was not aware that the Department of Justice had taken active steps to investigate a potential conflict involving him and Mr. Ferguson. Once that testimony was on the record, the undersigned was, at least as a technical matter, laboring under a potential conflict of interest. While the undersigned cannot presently identify an area where his own performance on behalf of Mr. Ferguson was compromised by the new information, he also recognizes that this is not his decision to make. Mr. Ferguson should have been advised by the Court, and given the opportunity to consult with independent conflict-free counsel, about the ramifications of the potential conflict of interest and whether or not he wished to proceed with potentially-conflicted counsel. That would be the normal procedure. Based on the unexpected disclosure by Agent Labno, no one thought to proceed that way at the time and the necessary

colloquy did not take place.

## Legal Standards

The Sixth Amendment right to effective assistance of counsel encompasses "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (*citing Cuyler v. Sullivan*, 446 U.S. 335 (1980). It is well settled that "[c]riminal defendants are guaranteed effective assistance of counsel, and have the right to representation free from conflict of interest, at all stages of the proceedings against them." *United States v. Lafuente*, 426 F.3d 894, 897 (7th Cir.2005) (*citing Hall v. United States*, 371 F.3d 969, 973 (7th Cir.2004)).

"A conflict exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Hubbard*, 22 F.3d 1410, 1418 (7th Cir. 1994) (*citing United States v. Carpenter,* 769 F.2d 258, 263 (5th Cir.1985)). Under certain circumstances, a defense attorney who has an actual or a potential conflict of interest renders ineffective assistance. *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir. 2002); *Cabello v. United States*, 188 F.3d 871, 875 (7th Cir.1999). "Defense counsel's conflict of interest can violate a defendant's Sixth Amendment right to effective assistance of counsel." *Freeman v. Chandler*, 645 F.3d 863, 868 (7th Cir. 2011). (*citing United States v. Adkins*, 274 F.3d 444, 453 (7th Cir.2001).

"If a criminal defendant's attorney is under investigation by the prosecutors of her client, there is a conflict." *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010); *see also United States v. Lowry*, 971 F.2d 55, 61 (7th Cir. 1992) (defense counsel's investigation by federal authorities raised a potential conflict of interest in that it was possible that counsel "would either refrain from aggressive cross examination during the trial in order that he might gain the favor of his potential prosecutors, or that he would be unduly hostile toward them, losing objectivity, and thus harm [his client's] rapport with the jury").

Ordinarily, a defendant alleging ineffective assistance must demonstrate that he was prejudiced by the deficient representation of his counsel. *Strickland v. Washington,* 466 U.S. 668, 687(1984). In the typical case, establishing prejudice requires demonstrating that, absent the attorney's deficient performance, there is a reasonable likelihood that the outcome of the proceedings would have been different. *United States v. Henry*, 933 F.2d 553, 561 (7th Cir.1991). However, where a conflict of interest provides the predicate for an ineffective assistance claim, a defendant bears a lighter burden with regard to demonstrating prejudice. *United States v. Horton*, 845 F.2d 1414, 1418 (7th Cir.1988). Because loyalty to his client is among the most basic of an attorney's duties, and because of the near impossibility of measuring the precise effect that is created by a breach of this duty due to conflicted interests, it is easier to satisfy *Strickland*'s prejudice requirement in a conflict of interest case. *Wallace*, 276 F.3d at 366; *Cabello*, 188 F.3d at 875. "If the trial judge knew or should have known that a potential conflict of interest existed and did not adequately address the issue with the defendant, then [the Seventh Circuit] will presume prejudice." *Wallace*, 276 F.3d at 366-67 (*citing Lipson v. United States*, 233 F.3d 942, 945 (7th Cir.2000)).

"This presumption of prejudice is necessary because a true conflict of interest forecloses the use of certain strategies and thus the effect is difficult if not impossible to measure." *United States v. Fish*, 34 F.3d 488, 492 (7th Cir.1994). The extent to which a defendant asserting a conflict of interest must demonstrate prejudice depends on whether and to what extent the alleged conflict was brought to the trial court's attention. *Fish,* 34 F.3d at 492; *see also United States v. Cook,* 45 F.3d 388, 393 (10th Cir.1995).

The Seventh Circuit has held that if the defendant or his attorney raises the issue or the trial judge otherwise knows or reasonably should know of the alleged conflict of interest, the judge

4

must inquire adequately into the potential conflict. *Fish,* 34 F.3d at 492; *Horton*, 845 F.2d at 1418. Otherwise, a reviewing court will presume prejudice if prejudice is possible. *United States v. Pergler*, 233 F.3d 1005, 1009 (7th Cir. 2000); *Fish,* 34 F.3d at 492; *Horton,* 845 F.2d at 1418 (citing *Holloway v. Arkansas*, 435 U.S. 475, 484–91(1978); *Walberg v. Israel,* 766 F.2d 1071, 1075 (7th Cir.); *United States v. Marrera,* 768 F.2d 201, 205 (7th Cir.1985)). Thus, when the district court is aware of the possible conflict and fails to inquire adequately into the possibility of conflict, a reviewing court "will presume prejudice, even without a showing of an actual conflict of interest." *Fish,* 34 F.3d at 492.

Only a knowing and voluntary waiver of the right to conflict-free counsel is effective, and will foreclose later arguments premised on this right. *Freeman*, 645 F.3d at 868. (*citing United States v. Lowry*, 971 F.2d 55, 60 (7th Cir.1992). The key question is whether the defendant knew enough to "make the choice an informed one-a rational reconciliation of risks and gains that are in the main understood." *Lowry*, 971 F.2d at 61. To be made knowingly and intelligently, a waiver must be made with "sufficient awareness of the relevant circumstances and likely consequences." *United States v. Flores,* 5 F.3d 1070, 1078 (7th Cir.1993). Generally, for a defendant's waiver to be valid, the judge must inform the defendant of the "nature and importance of the right to conflict-free counsel and ensure that the defendant understands something of the consequences of a conflict." *United States v. Turner*, 594 F.3d 946, 952 n. 1 (7th Cir.2010).

The district court must "inform each defendant of the nature and importance of the right to conflict-free counsel and ensure that the defendant understands something of the consequences of a conflict." *United States v. Hubbard*, 22 F.3d 1410, 1418 (7th Cir. 1994) (quoting *Flores*, 5 F.3d at 1078). Only once defendant is adequately and objectively informed of the potential conflict may he make a knowing and voluntary waiver of the potential conflict and choose to continue to be

represented by a potentially-conflicted attorney. "A waiver is sufficient if it was made knowingly and intelligently, that is to say, if it was made with sufficient awareness of the relevant circumstances and likely consequences." *Id*. (quoting *Flores*, 5 F.3d at 1078).

The Seventh Circuit has approved a district court's colloquy that informs a defendant of a potential conflict created by the possible investigation of his attorney as follows:

> (1) that during a grand jury investigation his attorney was named as being involved in illegal drug activity; (2) that the attorney was not currently a target of the investigation but could become a target, and could later be prosecuted; (3) that there 'is a possibility that, in order to protect himself from prosecution and to curry favor with the prosecutors, [your attorney] might fail to raise on your behalf defenses that should be raised . . . [and] might sell [you] out in order to help himself with the government;' (4) that the attorney might attempt to make a deal with the government; and (5) only his attorney knew 'whether there is anything that he could do in your case that would affect the likelihood of his prosecution.'

*Id*. at 1418-19; see also *United States v. Levine*, 794 F.2d 1203, 1205-1206 (7th Cir. 1986) (finding that defendant knowingly, voluntarily, and intelligently waived the conflict of interest after the district court explained the nature of the conflict, explained how the conflict could negatively impact the defendant, and inquired whether the defendant would like to consult another attorney).

**Argument**

Here, the Court undertook no colloquy regarding the potential conflict of interest with Mr. Ferguson whatsoever. The nature of the potential conflict became apparent as soon as Agent Labno testified, first on direct examination and then again on cross-examination, that DOJ had specifically approved of an investigation into potential criminal conduct of Mr. Ferguson's undersigned attorney. 10/20/23 Tr. at 276, 331, 332. At that point, it was undeniable that the situation was one where the Court "knows or reasonably should know of the possibility of a conflict of interest." See *Fish*, 34 F.3d at 492. The Court was thus *required* to inquire adequately

6

into the potential conflict, *Id.*, and "inform [Mr. Ferguson] of the nature and importance of the right to conflict-free counsel and ensure that the defendant understands something of the consequences of a conflict." *Hubbard*, 22 F.3d at 1418.

Here, the Court did not explain the importance of conflict-free counsel to Mr. Ferguson. It did nothing to ensure that Mr. Ferguson understood the circumstances, risks, or possible consequences of proceeding with potentially-conflicted counsel. It did nothing to ascertain whether Mr. Ferguson even desired to continue to be represented by counsel that he knew was had been approved for investigation by the Department of Justice.

The Court, Mr. Ferguson, and the undersigned all learned together that Agent Labno's questioning of Mr. Ferguson about his attorney was not solely the act of a dishonest and vindictive rogue agent, but was instead explicitly authorized and approved by the Department of Justice. Yet neither the Court, Mr. Ferguson, nor the undersigned appreciated the import of that new information in the moment. Mr. Ferguson's ignorance can be excused of a layman. The Court and the undersigned, however, each failed in their duty to inform and advise Mr. Ferguson and ensure that his constitutional rights were adequately safeguarded. No inquiries were made, no advice or information was given. The sentencing hearing continued uninterrupted.

Because the nature of the potential conflict of interest was facially apparent the moment Agent Labno testified regarding the approved nature of the investigation into the undersigned, the lack of inquiry or advice by the Court necessitates an automatic finding of prejudice. During its sentencing argument, government counsel stated: "Defense counsel literally just said he has 'wanted to get this man on the stand for years,' a man who was not only investigating the defendant, but also investigating Beau Brindley personally. Defense counsel literally just argued that he wants to use this sentencing to punish the government." That sounds an

7

awful lot like the government asserting some sort of personal pr improper motive on the part of the undersigned.  If they were sincere about that, then they has an absolute duty to request a conflict colloquy.  But they did not.  While this was apparently an attempted investigation years in the past rather than the revelation of some current investigation, the potential for conflict still undeniably existed and the government's own argument made their recognition of that fact crystal clear.

Under the circumstances, the only possible remedy is to vacate the judgment entered against Mr. Ferguson and restore him to the circumstances he was in at the time of the disclosure by Agent Labno so he can properly assess the conflict colloquy from the same standpoint he was in at the time the disclosure happened. Subsequently, the Court must insure that Mr. Ferguson adequately understand the nature of the potential conflict of interest. Mr. Ferguson must be permitted to retain (or, if he is unable to afford to do so, the Court must appoint) independent counsel to advise Mr. Ferguson of his rights and the risks of waiving the potential conflict if he were to choose to do so. If Mr. Ferguson does not wish to waive the conflict, he must be resentenced with the representation of new, conflict-free counsel.

If he wishes to waive the potential conflict and maintain his representation by the undersigned, he can only be permitted to do so once he has knowingly and intelligently waived his right to conflict-free counsel, which can *only* occur after he is fully advised by the Court as well as having the opportunity to consult with independent conflict-free counsel.

WHEREFORE, Mr. Ferguson moves this Honorable Court to vacate the judgement against him, restore him to the circumstances he was in at the time of the noted disclosure above and to hold further proceedings related to the potential conflict of interest.

Respectfully submitted,

/s/ Beau B Brindley

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Boulevard
Suite 1410
Chicago, Illinois  60604
(312) 765-8878