UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 734 |
| v. | |
| TERRY FERGUSON | Hon. Matthew K. Kennelly |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO VACATE JUDGMENT**

On October 20, 2023, after a contentious two-day hearing, this Court sentenced defendant Terry Ferguson to a below-Guidelines sentence of 84 months' imprisonment for firearms and narcotics offenses. Dkt. 472. Now, months later, defendant seeks to vacate the judgment, arguing that a "potential conflict of interest" arose between defendant and his counsel Beau Brindley during the sentencing hearing; that this Court should hold a hearing to advise defendant about this potential conflict; and that defendant should then be resentenced, after he has had the opportunity to discuss the potential conflict with conflict-free counsel. Dkt. 492. This Court should deny the motion.

As an initial matter, this Court lacks authority to grant defendant relief because defendant's appeal in this matter is pending before the Seventh Circuit. That appeal notwithstanding, under Federal Rule of Criminal Procedure 37(a)(2), this Court can deny—and should deny—defendant's motion. Prejudice is not presumed where there has been no conflict colloquy after a purportedly potential conflict of interest arises. Defendant has failed to assert, let alone establish, an actual conflict

of interest and adverse effect on his counsel's performance, as required to prevail on an ineffective assistance of counsel claim.

## I. BACKGROUND

### A. Defendant's Arrest and Motion to Suppress

The facts and procedural history of this case are well known to this Court. *See* Dkt. 477 at 1-4 (10/30/23 Memorandum Opinion and Order Denying Defendant's Motion for Reconsideration of Court's Denial of Motion to Dismiss Indictment and Motion for Release on Bond Pending Appeal). Defendant was charged by complaint in October 2018 and later by indictment in February 2019 with narcotics and firearms offenses. Dkt. 1, 58.

When executing defendant's arrest on October 30, 2018, law enforcement officers conducted a search of defendant's home and interviewed defendant. *See* Dkt. 244; S. Tr. 272:20-280:10. During that interview, ATF Special Agent Chris Labno asked defendant whether he was interested in cooperating with law enforcement against Mr. Brindley. S. Tr. 276:6-8. Defendant initially expressed interest in cooperating, but ultimately did not. S. Tr. 276:20-23; 280:10.

Defendant, through Mr. Brindley, later filed a motion to suppress evidence, arguing that law enforcement officers improperly searched his home. Dkt. 161. In January 2021, the Court denied the motion to suppress. Dkt. 244.

### B. Defendant's Sentencing Memorandum and Withdrawal of First Guilty Plea

Defendant pleaded guilty to a superseding information in March 2021. Dkt. 268. In his November 2021 sentencing memorandum, defendant, through Mr.

Brindley, argued for a sentence of time served or probation. Dkt. 325. In support of that recommendation, defendant cited alleged misconduct by law enforcement agents as a mitigating factor that the Court should consider in fashioning a sentence that promotes respect for the law. *Id.* at 19 (suggesting "undeniably inappropriate agent conduct" and arguing that "at sentencing, the Court has the authority to fashion a sentence that takes [that conduct] into account"); *id.* at 20 (arguing for a "sentence of probation, which will plainly say to these agents that there is indeed a consequence for these kinds of behaviors").

In January 2022, before sentencing, defendant withdrew his guilty plea, and the Court set a trial date. Dkt. 354.

### C.     Defendant's Motions to Dismiss

On September 16, 2022, just days before trial was set to begin, defendant, through Mr. Brindley, filed a motion to dismiss the indictment for selective and vindictive prosecution. Dkt. 391. The Court denied the motion without prejudice to filing a post-trial motion. Dkt. 394. After granting a continuance based on the health of defense counsel and defendant, the Court set a new trial date for January 3, 2023. Dkt. 397.

On the morning trial was scheduled to begin, defendant entered a guilty plea to Counts 1 (conspiracy to distribute 500 grams or more of cocaine) and 13 (possession of a firearm by a convicted felon) of a second superseding indictment. Dkt. 410, 423, 424.

One day before sentencing, on October 18, 2023, defendant, through Mr. Brindley, filed a second motion to dismiss, arguing, among other things, that the

Court should dismiss the indictment based on alleged misconduct by law enforcement agents in advance of the sentencing. Dkt. 465. The Court denied the motion during a two-day sentencing hearing held on October 19 and 20, 2023. Dkt. 477 at 4.

### D. October 2023 Sentencing Hearing and Appeal

During the second day of the two-day sentencing, Mr. Brindley called Agent Labno as the fifth and final witness. On direct examination, defense counsel asked Agent Labno about the October 30, 2018 interview of defendant, and, in particular, about Agent Labno's discussion with defendant regarding potential cooperation against Mr. Brindley. S. Tr. 272:20-280:10.[1] When asked on direct, "did you have authorization from the Department of Justice to be investigating a lawyer in this district when you went out there?" Agent Labno responded, "We had received permission from main Justice. I honestly don't remember the date." S. Tr. 276:9-14. Later, on cross examination, in response to the question, "Was there, in fact, a DOJ-approved investigation of Beau Brindley," Agent Labno responded, "Yes." S. Tr. 331:17-19.

---

[1] That Special Agent Labno talked to defendant about cooperating against Mr. Brindley in October 2018 was not new information to defendant or Mr. Brindley at the sentencing hearing. *See, e.g.*, Dkt. 492 at 1 (noting that before the sentencing, defense counsel was "aware that ATF Agent Chris Labno, upon originally arresting Mr. Ferguson in this case in 2018, began to question him about [Mr. Brindley] and potential involvement in alleged criminal activity"). Indeed, nearly four years before the sentencing, on December 13, 2019, Mr. Brindley attached to defendant's motion to suppress ATF ROI 172—which describes Special Agent Labno's October 2018 discussion with defendant about Mr. Brindley. *See* Dkt. 161-1. Defendant also referenced Agent Labno's questioning about Mr. Brindley in his initial sentencing memorandum, filed on November 11, 2021. Dkt. 325 at 14 ("Labno specifically asked him if he could somehow provide incriminating information about his lawyer, the undersigned.").

During closing argument, after Agent Labno's testimony, Mr. Brindley argued, as he had argued nearly two years earlier in his initial sentencing memorandum, that the Court should consider the actions of the investigating agents as a mitigating factor in imposing defendant's sentence. In particular, Mr. Brindley argued that "injustices happened to Terry Ferguson in the course of this case," S. Tr. 386:16-17; that the case "is rife with things that should never happen in an investigation," S. Tr. 387:1-2; and that the Court has "broad discretion to mitigate sentences in order to establish just results and assure respect for the law" where "agents actually engage in a pattern . . . of constitutional rights violations," S. Tr. 408:17-24. Mr. Brindley then urged the Court to "use this opportunity to do that which this case calls for. Use the power of this moment to rectify, to make even, to make it right." S. Tr. 417:18-22.

The Court calculated an advisory Guidelines range of 135-168 months' imprisonment, S. Tr. 358:24-25, and imposed a below-Guidelines sentence of 84 months, as well a four-year term of supervised release on Count 1 and a three-year term of supervised release on Count 13. S. Tr. 427:7-10; 444:19-20. The Court credited defense counsel's mitigation argument as a basis for the below-Guidelines sentence. *E.g.*, S. Tr. 439:24-440:2 ("But there's no question that things were done that shouldn't have been done. And it really, I think, you know, largely what the defense discussion has been about here is the extent to which, if any, that should impact the sentence. . . ."); S. Tr. 444:14-17 ("I have to look at the corners that were cut in order to take him down. And I don't have any doubt that corners were cut. They were. And that's going to have an impact on the sentence. . . ."); Dkt. 477 at 4 ("Ferguson's

counsel argued, and the Court took into account, the actions of the investigating agents as a factor in imposing sentence."). The judgment was entered on the docket on October 24, 2023. Dkt. 472.

On Monday, October 23, 2023, defendant, through Mr. Brindley, filed a Motion to Renew or Reconsider Motion to Dismiss Indictment for Selective and Vindictive Prosecution and a Motion for Release on Bond Pending Appeal. Dkt. 470, 471. In his motion to reconsider the motion to dismiss, defendant "incorporate[d] the legal and factual argument from his original motion" (filed before Agent Labno's testimony) and argued that the "actions of Agent Christopher Labno and the United States Attorney's Office leading up to Mr. Ferguson's sentencing hearing have provided a further demonstration of how Terry Ferguson was singled out as a class of one and targeted for vindictive and selective prosecution." Dkt. 470 at 2. In his motion for release, defendant argued that "exceptional reasons" existed for his release from custody, including the "repeated and deliberate behavior" of Agent Labno, who, according to defendant, "had a personal vendetta against Terry Ferguson and (seemingly) his counsel." Dkt. 471 at 10-15. This Court denied both motions on October 30, 2023. Dkt. 477.

Defendant filed a notice of appeal on November 6, 2023. Dkt. 480. His appeal is pending. On January 19, 2024, defendant, through Mr. Brindley, filed a motion for an extension of time to file his opening brief, noting that he had filed a motion to vacate his sentence in the district court, based on a "potential conflict of interest between himself and [Mr. Brindley]" and that "it would not be prudent for [Mr.

Brindley] to complete any substantive briefing on [defendant's] behalf before the potential conflict issue and sentencing vacation motion are resolved." Appeal No. 23-3198 (7th Cir.), Dkt. 4. The Seventh Circuit granted the motion, and defendant's opening brief is currently due on February 26, 2024. *Id.* Dkt. 5.

### E. Motion to Vacate Judgment

On January 17, 2024—months after the sentencing and while defendant's appeal was pending—defendant, through Mr. Brindley, filed the present motion to vacate the judgment. Dkt. 492. In particular, defendant argues that from the moment that Agent Labno testified about a DOJ investigation of Mr. Brindley, Mr. Brindley was "laboring under a potential conflict of interest." Dkt. 492 at 2. As a result, defendant maintains, he should have been "advised by the Court, and given the opportunity to consult with independent conflict-free counsel, about the ramifications of the potential conflict of interest and whether or not he wished to proceed with potentially-conflicted counsel." *Id.* Because no such colloquy took place, according to defendant, the "only possible remedy" is to vacate the judgment and "restore him to the circumstances he was in at the time of the disclosure by Agent Labno so he can properly assess the conflict colloquy from the standpoint he was in at the time the disclosure happened." *Id.* at 8. Defendant asks that the Court advise defendant of the "nature of the potential conflict of interest" and allow defendant to consult with conflict-free counsel about how to proceed at resentencing. *Id.* at 1, 8.

The Court ordered the government to file a response no later than February 1, 2024, and set an in-person hearing on February 9, 2024. Dkt 493. On January 24, 2024, defendant filed a Motion for Bond Pending Resolution of Motion to Vacate

Sentence, asking to be released on bond with the conditions that were in place prior to sentencing because he "desires to identify and consult with other independent counsel" and "[i]t is almost impossible to effectively to do so while in custody." Dkt. 494. The Court indicated that the motion for release from custody will be discussed at the February 9, 2024 hearing. Dkt. 495.

## II.    ARGUMENT

This Court should deny defendant's motion, both on procedural grounds and on the merits. This Court does not have jurisdiction to grant the motion because of defendant's pending appeal. The Court can, and should, also deny the motion on the merits because defendant has failed to make the requisite showings to establish ineffective assistance of counsel.

### A.    The Court Does Not Have Jurisdiction To Grant Defendant's Motion.

Given defendant's pending appeal before the Seventh Circuit, this Court does not have jurisdiction to grant defendant's motion.

"'The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *United States v. Brown*, 732 F.3d 781, 787 (7th Cir. 2013) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)). *See also May v. Sheahan*, 226 F.3d 876, 879 (7th Cir. 2000) ("[A] notice of appeal divests the district court of its control over those aspects of the case involved in the appeal," unless "the proceeding before the district court is a discrete matter ancillary to the issues under consideration in the other court."

(cleaned up)). "[A] district court may not interfere with this court's jurisdiction by amending a decision that is under appellate review" because "[o]nly one court at a time has jurisdiction over a subject." *United States v. McHugh*, 528 F.3d 538, 540 (7th Cir. 2008). "The point of the rule is to avoid the confusion of placing the same matter before two courts at the same time and to preserve the integrity of the appeal process." *Brown*, 732 F.3d at 787 (cleaned up).

Here, defendant has not yet filed his opening brief in his appeal, and so the claims he will ask the Seventh Circuit to assess—relative to the claims raised by his instant motion—are still unknown. Yet it is difficult, if not impossible, to imagine a scenario in which defendant's appeal does not implicate his ultimate sentence or the issues underlying it, including his persistent claims of agent misconduct and vindictive or selective prosecution. In other words, the instant motion cannot credibly be construed as "a discrete matter ancillary to the issues under consideration in the [appeals] court." *See May*, 226 F.3d at 879.

Federal Rule of Criminal Procedure 37 does provide one avenue for a district court to *consider*—though not adjudicate—a motion brought by a party even after the court has been divested of jurisdiction through an appeal. More specifically, Rule 37(a) "governs timely motions for relief that the district court lacks authority to grant because of a pending appeal." *United States v. Taylor*, 796 F.3d 788, 792 (7th Cir. 2015). It provides district courts with three options: "(1) defer considering the motion; (2) deny the motion; or (3) state either 'that it would grant the motion if the court of

appeals remands for that purpose,' or 'that the motion raises a substantial issue.'"[2] *United States v. Barrett*, 834 F. App'x 264, 265 (7th Cir. 2021) (citing Fed. R. Crim. P. 37(a)). If the district court takes the third option, "[t]he movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1." Fed. R. Crim. P. 37(b); *see also* Fed. R. App. P. 12.1(a). The appeals court may then remand for further proceedings, but "retains jurisdiction unless it expressly dismisses the appeal." Fed. R. App. P. 12.1(b); *see also United States v. Caguana*, 884 F.3d 681, 683 n.1 (7th Cir. 2018) (describing process under Rule 12.1).

Critically, Rule 37(a) does not allow a district court to actually grant substantive relief, unless and until the appeals court remands the matter for further proceedings. *See* Fed. R. Crim. P. 37(a)(3); Fed. R. App. P. 12.1(b). *See also United States v. Thompson*, 510 F. Supp. 3d 633, 636 (N.D. Ill. 2020) ("Conspicuously, the available options do *not* include granting the substantive relief [the defendant] seeks . . . At best, Rule 37(a) allows me to indicate that I would grant relief if his appeal were remanded for that purpose.") (emphasis added).

For the reasons set forth in Section II.B, the government requests that this Court deny defendant's motion—as it is permitted to do under Rule 37(a)(2). *See United States v. Rossini*, No. 22-2030, 2023 WL 6059780, at *1 (7th Cir. Sept. 18,

---

[2] Rule 37 does not define "substantial issue," but the Committee Notes to the 2011 Amendment explain that "a motion may present complex issues that require extensive litigation and may either be mooted or be presented in a different context by decision of the issues raised on appeal," and thus, "[i]n such circumstances the district court may prefer to state that the motion raises a substantial issue, and to state the reasons why it prefers to decide only if the court of appeals agrees that it would be useful to decide the motion before decision of the pending appeal." Fed. R. Crim. P. 37 (Committee Notes on Rules-2011 Amendment).

2023) ("Given his pending appeal, the court first considered whether it could rule on his motion and correctly concluded that it had the authority to deny the motion under Rule 37(a)(2).").[3]

### B. Defendant's Motion Lacks Merit Because Defendant Cannot Establish Ineffective Assistance of Counsel.

Defendant cites the wrong standard for addressing his motion; prejudice is not presumed based on the alleged potential conflict and absence of a conflict colloquy. Rather, to prevail on his motion substantively, defendant must establish that an actual conflict of interest existed that it had an adverse effect on Mr. Brindley's performance. Because defendant cannot make this requisite showing, his motion should be denied.

#### 1. Under the Applicable Law, Prejudice Is Not Presumed Based on the Potential Conflict of Interest Alleged Here and the Absence of a Conflict Colloquy.

"Criminal defendants are guaranteed effective assistance of counsel at all stages of the proceedings against them." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (citation omitted). "This right includes the right to representation that is

---

[3] Defendant's motion potentially presents other procedural obstacles. In particular, Rule 37 pertains only to timely filed motions, but if defendant's motion were construed as a motion brought under Federal Rule of Criminal Procedure 35(a), it is clearly untimely. *See* Fed. R. Crim. P. 35(a) (giving a district court 14 days to "correct a sentence that resulted from arithmetical, technical, or other clear error"). That being said, defendant's claim cannot be fairly understood as highlighting a "clear error." *See United States v. Heon Seok Lee*, 937 F.3d 797, 817 (7th Cir. 2019) (describing "clear error" as "an aspect of the sentence that is objectively erroneous—whether on a factual matter or a point of law"); *United States v. Jett*, 782 F.3d 1050, 1052 (8th Cir. 2015) ("An ineffective assistance of counsel claim does not fit in Rule 35(a)'s narrow scope."). A motion brought under 28 U.S.C. § 2255 would be timely, *see* 28 U.S.C. 2255(f), but that is not the motion that defendant has brought. Dkt. 492 at 1 n.1.

free from conflict of interest." *Id.* (cleaned up); *Blake v. United States*, 723 F.3d 870, 880 (7th Cir. 2013) ("The Sixth Amendment right to effective assistance of counsel encompasses a correlative right to representation that is free from conflicts of interest." (cleaned up)).

There are two analytical frameworks for analyzing ineffective assistance of counsel claims based on a conflict of interest by defense counsel. *Blake*, 723 F.3d at 880. The first framework, which applies if defense counsel was faced with a choice between advancing his own interests above those of his client and therefore labored under an "actual" conflict of interest, necessitates the showing of an "adverse effect" on the attorney's performance. *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980); *Freeman v. Chandler*, 645 F.3d 863, 869 (7th Cir. 2011); *Hall*, 371 F.3d at 973; *Stoia v. United States,* 22 F.3d 766, 771 (7th Cir. 1994)). A petitioner may show an adverse effect by demonstrating "that there is a reasonable likelihood that his counsel's performance would have been different had there been no conflict of interest." *Id.* (cleaned up). Under the second framework, where there has been no "actual" conflict of interest alleged or shown, a petitioner must establish that the conflict resulted in ineffective assistance according to the more demanding standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, the petitioner must demonstrate "that counsel's representation fell below an objectively reasonable standard of care, and that there is a reasonable probability that but for counsel's unprofessional errors the trial outcome would have been different." *Id.* (cleaned up).

Defendant recites a different standard for assessing ineffective assistance of counsel claims based on an alleged conflict of interest. Quoting *United States v. Wallace*, 276 F.3d 360, 366-67 (7th Cir. 2002), defendant asserts that "[i]f the trial judge knew or should have known that a potential conflict of interest existed and did not adequately address the issue with the defendant, then [the Seventh Circuit] will presume prejudice." Dkt. 492 at 4; *see also id.* (citing *Lipson v. United States*, 233 F.3d 942, 945 (7th Cir. 2000)); *id.* at 5 (arguing that "when the district court is aware of the possible conflict and fails to inquire adequately into the possibility of conflict, a reviewing court 'will presume prejudice, even without a showing of an actual conflict of interest.'" (citing *United States v. Fish*, 34 F.3d 488, 492 (7th Cir. 1994)).

This may have been the standard in the past—and conflict-of-interest colloquies can still be appropriate and useful vehicles for ensuring a defendant's Sixth Amendment right to conflict-free counsel.[4] But for purposes of the circumstances presented here, defendant's articulated standard has been displaced by *Mickens v. Taylor*, 535 U.S. 162 (2002). *Mickens*, *id.* at 170-74, rejected a petitioner's position

---

[4] For example, Federal Rule of Criminal Procedure 44 requires the court to "promptly inquire about the propriety of joint representation and . . . personally advise each defendant of the right to . . . separate representation." Fed. R. Crim. P. 44(c)(2). In particular, the district court has "'the duty to inquire adequately into a trial counsel's conflict of interest if it knows or reasonably should know that a particular conflict exists.'" *United States v. Wright*, 85 F.4th 851, 858 (7th Cir. 2023) (quoting *Holleman v. Cotton*, 301 F.3d 737, 742 (7th Cir. 2002)). But as the Seventh Circuit recently made clear, the court's duty to inquire into the conflict is limited to cases involving a conflict based on joint representation, and is therefore inapplicable here. *Id.* (rejecting defendant's argument to "apply a similar principle to all conflicts and require the district court [to] use standardized language to admonish the defendant of her Sixth Amendment right"); *see also United States v. Lafuente*, 426 F.3d 894, 897 (7th Cir. 2005) (noting limitation "to situations in which the district court requires joint representation over a timely objection"); *Blake*, 723 F.3d at 882 n.11 (same).

that "where the trial judge neglects a duty to inquire into a potential conflict, the defendant, to obtain reversal of the judgment, need only show that his lawyer was subject to a conflict of interest, and need not show that the conflict adversely affected counsel's performance." As the Seventh Circuit has explained, *Mickens* "modified the previous analysis of ineffective assistance of counsel claims based on a conflict of interest" that had been set forth in *Wallace*, such that a defendant now "must establish that an *actual conflict* of interest *adversely affected* his attorney's performance." *United States v. Fuller*, 312 F.3d 287, 291 (7th Cir. 2002) (emphasis added). Post-*Mickens*, "a *potential* conflict of interest, no matter how it is addressed by the trial judge, is now insufficient to warrant relief." *Id.* at 291-92 (emphasis in original) (citing *Mickens*); *see also United States v. Lewisbey*, 843 F.3d 653, 657 (7th Cir. 2016) ("The mere possibility of a conflict is insufficient" because "[t]o establish a violation of the Sixth Amendment right to conflict-free counsel, the defendant 'must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" (quoting *Cuyler*, 446 U.S. at 348)).

Simply put, defendant's argument—that there is a presumption of prejudice here because the Court became aware of a potential conflict of interest and did not conduct a conflict colloquy—is based on an outdated standard that no longer provides a basis for relief.

### 2. Defendant Cannot Establish Ineffective Assistance of Counsel Where There Was No Actual Conflict of Interest.

"An *actual* conflict exists when an attorney actively represents incompatible interests; it is more than a mere theoretical division of loyalties." *Fuller*, 312 F.3d at

291 (emphasis in original) (cleaned up). In other words, "an actual conflict exists if an attorney is torn between two different interests, or required to make a choice advancing his own interests to the detriment of his client's interests." *United States v. Wright*, 85 F.4th 851, 859 (7th Cir. 2023) (cleaned up); *see also Hall*, 371 F.3d at 973 ("[A]n actual conflict exists if the defense counsel was faced with a choice between advancing his own interests above those of his client.").

To be sure, a defense counsel's knowledge of a pending federal investigation could raise a "potential conflict of interest." *See United States v. Lowry*, 971 F.2d 55, 61 (7th Cir. 1992). As an initial matter, however, Mr. Brindley did not interpret Agent Labno's testimony to reflect a pending investigation. *See* Dkt. 492 at 8 (characterizing testimony as revealing only "an attempted investigation years in the past rather than . . . some current investigation"). Moreover, the Seventh Circuit has explained that "[i]nvestigation of a defense counsel, without more, is insufficient to demonstrate an actual conflict of interest." *United States v. Hubbard*, 22 F.3d 1410, 1418 (7th Cir. 1994) (citing *United States v. Balzano*, 916 F.2d 1273, 1293 (7th Cir. 1990)). *See also United States v. Montana*, 199 F.3d 947, 949 (7th Cir. 1999) ("The mere fact of being under investigation by the prosecutors of the lawyer's client does not create a fatal conflict." (citing cases)). Where "a defendant asserts that an investigation into the criminal activities of his counsel creates a conflict between the defendant's interest in effective representation and the attorney's interest in protecting himself from the investigation," the Seventh Circuit has explained that "an actual conflict arises 'only where there is a danger that [counsel] would ineffectively represent his client because

of fear that authorities might become aware of the attorney's own misconduct if he undertook effective representation.'" *Blake*, 723 F.3d at 881 n.10 (quoting *Balzano*, 916 F.2d at 1293).[5]

The Seventh Circuit has explained that a criminal investigation into a defendant's lawyer also "can create a conflict of interest" because it "may induce the lawyer to pull his punches in defending his client lest the prosecutor's office be angered by an acquittal and retaliate against the lawyer." *Thompkins v. Cohen*, 965 F.2d 330, 332 (7th Cir. 1992); *see also Lowry*, 971 F.2d at 61 (potential conflict arises because it is "possible that as a result of the pressure of being investigated, [defense counsel] would either refrain from aggressive cross-examination during the trial in order that he might gain the favor of his potential prosecutors, or that he would be unduly hostile toward them, losing objectivity, and thus harm [defendant's] rapport with the jury").

Here, defendant cannot establish an actual conflict within these parameters— nor does he even assert one. Defendant repeatedly avers that his Sixth Amendment right to conflict-free counsel was purportedly compromised based only on a potential conflict of interest. *E.g.*, Dkt. 492 at 1 (moving this Court to "hold a hearing to properly advise [defendant] about a potential conflict of interest"); *id.* at 2 (discussing "potentially-conflicted counsel" and noting "potential conflict of interest" after Agent

---

[5] Defendant cites *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010), where the Seventh Circuit, citing *Lowry*, stated that "[i]f a criminal defendant's attorney is under investigation by the prosecutors of her client, there is a conflict." *See* Dkt. 492 at 3. Notably, in the next sentence, the appeals court explained that defendant would also need to show a fear of retaliation, as articulated in *Balzano*. *Lafuente*, 617 F.3d at 946.

Labno's testimony); *id.* at 6 ("potential conflict became apparent as soon as Agent Labno testified"); *id.* at 7 ("nature of the potential conflict of interest was facially apparent the moment Agent Labno testified"); *id.* at 8 (requesting "further proceedings related to the potential conflict of interest"). *See also* Appeal No. 23-3198 (7th Cir.), Dkt. 4 at 1 (motion for extension of time describing "potential conflict of interest between [defendant] and [Mr. Brindley]").[6]

Defendant never identifies any "incompatible interests" between himself and defense counsel or any instances where defense counsel was "required to make a choice advancing his own interests to the detriment of his client's interests." *Fuller*, 312 F.3d at 291; *Wright*, 85 F.4th at 859; *United States v. Cirrincione*, 780 F.2d 620, 629 (7th Cir. 1985) ("An actual conflict of interest that adversely affected the defendants' lawyers' performance must be evidenced by specific instances in the record."). Although defendant's motion generally contends that Mr. Brindley's examination of Agent Labno may have been motivated by counsel's "personal or improper motive" (Dkt. 492 at 7-8), he never explains how those motives diverged from his own—particularly where defendant had long made allegations of agent misconduct and vindictive prosecution. *See also infra* at 2-4 and *supra* at 20-23.

Likewise, defendant never alleges that an actual conflict arose owing to a "danger that [Mr. Brindley] would ineffectively represent [defendant] because of fear

---

[6] At one point in his motion, defendant asserts that he "recognizes that there might be a potential or actual conflict of interest that became manifest during his sentencing hearing." Dkt. 492 at 2. This sentence is fairly construed as alleging only a "potential" conflict of interest given the frequency with which defendant employs that term (and not "actual conflict") throughout the remainder of his motion.

that authorities might become aware of [Mr. Brindley's] own misconduct if he undertook effective representation," *Blake*, 723 F.3d at 881 n.10, or that, after hearing Agent Labno's testimony, Mr. Brindley pulled punches or attempted to curry favor with the prosecutors. Defendant never articulates what questions Mr. Brindley could have asked—but did not—for fear of what it could reveal about Mr. Brindley's conduct or what impact those questions might have had on the prosecutors' view of him. To the contrary, defendant, through Mr. Brindley, expressly concedes that he "cannot presently identify an area where [Mr. Brindley's] own performance on behalf of [defendant] was compromised by the new information." Dkt. 492 at 2.

This is not a case like *Thompkins*, 965 F.2d at 332, where defense counsel accepted immunity in exchange for cooperation with the same office that was prosecuting his client, or *Stoia v. United States*, 109 F.3d 392, 396 (7th Cir. 1997), where defense counsel accepted a plea agreement in which he would "cooperate with the federal government as a confidential informant" and "refrain from representing individuals charged with crimes under investigation by the United States Attorney's Office, any federal law enforcement authority . . . or in matters in which the federal government has an interest." Unlike defense counsel in those cases, who created a situation ripe for a conflict by representing a client while under obligation to cooperate with the government, there is no support in the record for the conclusion that defense counsel here could somehow obtain a more favorable situation for himself by jeopardizing defendant's case.

In short, defendant has not articulated an actual conflict; nor could he. Accordingly, his claim of ineffective assistance of counsel fails.

> **3. Even Assuming an Actual Conflict of Interest, Defendant Has Not Identified, and Cannot Identify, an Adverse Effect Arising Out of That Conflict.**

Even if the Court determines that an actual conflict of interest arose out of Agent Labno's testimony, defendant still cannot establish that the conflict "adversely affected his lawyer's performance." *Burkhardt v. United States*, 27 F.4th 1289, 1295 (7th Cir. 2022) (cleaned up). "An adverse effect can be demonstrated by showing that but for the attorney's actual conflict of interest, there is a reasonable likelihood that counsel's performance somehow would have been different." *United States v. Coscia*, 4 F.4th 454, 475 (7th Cir. 2021) (cleaned up). In other words, "[t]he defendant must show specific instances where [his] attorney could have, and would have, done something different." *Burkhardt*, 27 F.4th at 1295 (cleaned up). Although not as difficult to meet as the standard for prejudice for typical ineffective assistance of counsel claims under *Strickland*, "demonstrating an adverse effect is nevertheless a significant burden." *Id.* (cleaned up).

As already discussed, defendant has not identified a single instance from the sentencing hearing after Agent Labno's testimony, where defense counsel's performance would have been different, absent Labno's statements about a DOJ investigation. Nor could he on this record. In the instant motion, Mr. Brindley concedes that he did not "appreciat[e] the import" of Agent Labno's testimony in the moment (Dkt. 492 at 7), severely undercutting any claimed adverse effect on counsel's performance.

In addition, defendant, through Mr. Brindley, made the same arguments at the October 2023 sentencing hearing that he made in his initial sentencing memorandum—filed in November 2021, nearly two years before Agent Labno testified. Dkt. 325. In the 2021 sentencing memorandum, defendant sought a sentence of time served or probation. *Id.* at 28. In making that request, defendant asked this Court to consider agent conduct during the investigation. *Id.* at 19 (suggesting "undeniably inappropriate agent conduct" and arguing that "at sentencing, the Court has the authority to fashion a sentence that takes [the agent conduct] into account"); *id.* at 20 (arguing for a "sentence of probation, which will plainly say to these agents that there is indeed a consequence for these kinds of behaviors"). According to defendant's 2021 sentencing memorandum:

> The only thing that will truly deter this conduct is a minimal sentence for Terry Ferguson. That is the only thing that will impact these agents. Otherwise, these agents will simply be able to celebrate achieving the result they wanted and getting away with every constitutional violation noted above. Mr. Ferguson entreats this Court to not let that happen. A sentence of time served or probation will send the message for which this case calls out.

*Id.* at 20.

Defendant, through Mr. Brindley, made these same arguments after Agent Labno's testimony. *E.g.*, S. Tr. 358:13-15 ("We have significant arguments under 3553 that impact what we think the effective range of sentence should really be in this case."); *id.* at 386:14-19 ("Through the course of the last two days and through previous hearings and filings and findings, what is true for certain is that injustices happened to Terry Ferguson in the course of this case. And now we must find a

resolution that takes into account of all of that, both what he did, what he did, and what was done to him in this investigation."); *id.* at 387:1-5 (arguing that the case "is rife with things that should never happen in an investigation" and that "I have tried every avenue conceivable in this case to try to address them"); *id.* at 408:17-409:4 (arguing that "[c]ourts have broad discretion to mitigate sentences in order to establish just results and assure respect for the law" where "agents actually engage in a pattern . . . of constitutional rights violations"); *id.* at 417:13-15 ("I did all I could to expose what I could through the questioning of Agent Labno because I desperately know and want something to happen to make this right in this court."); *id.* at 417:18-22 (asking this Court to "use this opportunity to do that which this case calls for. Use the power of this moment to rectify, to make even, to make it right.").

Even after sentencing, defense counsel continued to attack the prosecution's case aggressively, including by filing a Motion to Renew or Reconsider Motion to Dismiss Indictment for Selective and Vindictive Prosecution and Motion for Release on Bond Pending Appeal. Dkt. 470, 471. In both filings, defense counsel again critiqued the actions of the government, including the prosecutors, in the same way he did before Agent Labno's testimony. *E.g.*, Dkt. 470 (criticizing actions of Agent Christopher Labno and the United States Attorney's Office leading up to Mr. Ferguson's sentencing); Dkt. 471 at 10-15 (arguing "exceptional reasons" existed for defendant's release from custody, including the "repeated and deliberate behavior" of Agent Labno).

Where defendant, through Mr. Brindley, advanced the same arguments both before and after the purportedly pivotal statement in Agent Labno's testimony, there is no showing of adverse effect. Indeed, the opposite appears to be true, where this Court credited Mr. Brindley's arguments in imposing a below-Guidelines sentence. S. Tr. 444:14-17 ("I have to look at the corners that were cut in order to take him down. And I don't have any doubt that corners were cut. They were. And that's going to have an impact on the sentence. . . ."); Dkt. 477 at 4 ("Ferguson's counsel argued, and the Court took into account, the actions of the investigating agents as a factor in imposing sentence."). There is simply "no evidence" that Mr. Brindley "pulled his punches" or acted out of "a fear of retaliation" from the government during the time he was defendant's counsel. *See Blake*, 723 F.3d at 882 (rejecting claim of ineffective assistance because "[t]o the extent that Blake contends that Mr. Fabbri was incented to cooperate with the government or that he acted in a manner he would not otherwise have done to the detriment of Blake's interests, there simply is no evidence to support such arguments").

Given that defendant has failed to show any adverse effect arising from the alleged conflict, he cannot establish ineffective assistance of counsel.

### 4. Even Assuming a Potential Conflict of Interest, Defendant Still Cannot Prevail.

Where, as here, "there has been no 'actual' conflict of interest alleged or shown, a petitioner must establish that the conflict resulted in ineffective assistance according to the familiar and more demanding *Strickland* standard." *Blake*, 723 F.3d at 880. To prevail under this standard, defendant must show (1) that his attorney's

performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for his counsel's errors, the result of the sentencing proceeding would have been different. *Strickland*, 466 U.S. at 688, 694.

The inquiry under the first component of this test is "highly deferential" to counsel. *Strickland*, 466 U.S. at 689. "[T]here is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001) (cleaned up). Strategic decisions are not second-guessed on review. *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009). The second component of the *Strickland* test requires the petitioner to establish that he was prejudiced by his counsel's deficient performance. *Strickland*, 466 U.S. at 687. This requires defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Defendant must satisfy both prongs of the test in order to meet his burden. *Id.* at 687.

For the same reasons that defendant cannot establish ineffective assistance of counsel under the more generous *Cuyler* standard for actual conflicts, he cannot establish ineffective assistance of counsel under the more demanding *Strickland* standard. Defendant has not articulated how, after Agent Labno's testimony, Mr. Brindley's representation fell below an objectively reasonable standard of care. He does not cite a single error by Mr. Brindley, nor does he argue that he was prejudiced

by Mr. Brindley's performance after Agent Labno's testimony. Accordingly, his ineffective assistance of counsel claim fails.

## III.   CONCLUSION

For the reasons stated above, the Court should deny defendant's motion to vacate the sentence and, by extension, should deny defendant's motion for bond pending resolution of the motion to vacate defendant's sentence.


Dated: February 1, 2024                    Respectfully submitted,

                                            MORRIS PASQUAL
                                            Acting United States Attorney

                              By:   */s/ Edward A. Liva, Jr.*
                                            EDWARD A. LIVA, JR.
                                            Assistant U.S. Attorney
                                            219 South Dearborn Street, 5th Floor
                                            Chicago, Illinois 60604
                                            (312) 353-5300