IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Docket No. 18 CR 734-1 |
| vs. ) | |
| ) | Honorable Matthew F. Kennelly |
| TERRY FERGUSON, ) | |
| ) | |
| Defendant. ) | |

**REPLY TO GOVERNMENT RESPONSE TO MOTION TO VACATE JUDGMENT**

This Court has jurisdiction to decide whether there was a conflict of interest. While the government is correct that, "[a]s a general rule, an appeal from the district court 'vests jurisdiction in the court of appeals,'" *Feehan v. Evers*, No. 22-2704, 2023 U.S. App. LEXIS 19901, at *4 (7th Cir. Aug. 2, 2023) (unpublished) (quoting *Overnite Transp. Co. v. Chi. Indus. Tire Co.*, 697 F.2d 789, 792 (7th Cir. 1983)), there are exceptions to the general rule. Under one exception, "[t]he district court's power to hear and act continues during an appeal" where "the district court 'is entertaining motions collateral to the judgment or motions which would aid in resolution of the appeal.'" *Id.* (quoting *Overnite*, 697 F.2d at 792). The issue of whether a conflict exists would aid in the resolution of Mr. Ferguson's appeal, as it would clarify the issues for appeal, particularly where, as here, an appellate brief has not yet been filed. Moreover, it would help to determine whether there is a conflict of interest issue that may impact the appeal itself. Further, the Court could rule on the issue of whether a conflict of interest existed and reserve judgment as it pertains to the remedy, and thus leave the judgment undisturbed. This would be within the Courts jurisdiction, regardless of whether a notice of appeal was filed. *See United States v. Cruz-Rivera*, Nos. 22-2644, 22-2866, 2023 U.S. App. LEXIS 24295, at *2 (7th

Cir. Sep. 13, 2023) (unpublished) ("A notice of appeal divests a district court of jurisdiction to alter the judgment on appeal, . . . but does not subtract from a court's power to decide collateral matters that are not before the court of appeals."). As the appellate brief has not yet been filed (and is not due until 2/26/2024), the issue of whether there was a conflict of interest is not before the Court of Appeals. This Court thus retains jurisdiction to decide the issue and then determine how it will rule on the remedy requested—here the vacation of judgment against Terry Ferguson.

Should the Court be inclined to grant Mr. Ferguson's motion, it can request that the Seventh Circuit remand the case to allow this Court to grant Mr. Ferguson's motion. "Under Federal Rule of Appellate Procedure 12.1, if a timely motion is made in district court for relief that the court lacks authority to grant because an appeal has been docketed and is pending, and the district court states that the motion raises a substantial issue, the Court of Appeals may remand for further proceedings while retaining jurisdiction." *United States v. Caguana*, 884 F.3d 681, 683 n.1 (7th Cir. 2018). The conflict of interest raises an undeniably substantial issue (as is discussed in greater depth below), so this Court could request that the Seventh Circuit remand the case for further proceedings under Federal Rule of Appellate Procedure 12.1.

This Court also retains jurisdiction over the issue of whether Mr. Ferguson is entitled to seek the advice of independent counsel regarding the extent of the conflict and Mr. Ferguson's continued representation, and whether he can be released from custody for that purpose. That issue is entirely ancillary to any issues that will be raised on appeal, and granting Mr. Ferguson's for release to effectively to seek independent counsel does not in any way attack the judgment. This Court thus retains authority to order Mr. Ferguson's release for the purpose of seeking the advice of independent counsel, which is essential to the determination of how he wishes to proceed on this motion and with respect to the issues contained therein.

The government's response appears to be predicated on the idea that there is only one aspect of the investigation of a defendant's attorney that creates a conflict—fear of retaliation. But the Seventh Circuit has recognized that there the investigation of an attorney runs the equal risk that that the attorney become "unduly hostile toward [the prosecution]," thus "losing objectivity . . . ." *United States v. Lowry*, 971 F.2d 55, 61 (7th Cir. 1992). Mr. Ferguson is not arguing that the undersigned pulled punches out of fear of retaliation. Nor could the undersigned be in any position to make such an argument. To the contrary, the Mr. Ferguson is arguing that the undersigned's objectivity may have been compromised by learning that there was an investigation approved by main justice. The government's argument that Labno's testimony was not interpreted as describing an active investigation does not diminish this type of conflict. To the contrary, one might be more incensed by learning that the justice department had approved a baseless investigation. Here, the undersigned cannot deny the rage and aggravation that accompanied this disclosure. There is no question, that occurred. That creates the possibility of an actual conflict of interest that required a colloquy.

In any event, Mr. Ferguson did not have the opportunity to make a knowing waiver of this conflict. Labno's questioning of Ferguson was, for years, interpreted as him undertaking his own questioning out of a personal dislike of the undersigned, which has been weel documented.. It is quite a different thing to know the questioning was part of a DOJ-approved investigation. While the undersigned is not in the place to judge whether it affected his performance at sentencing, learning that there was a DOJ-approved investigation certainly was a shocking revelation that created extreme disdain for the prosecutors who would pursue such an endeavor. That disdain has the capacity to create a potential or actual conflict of interest and thereby required a colloquy

And, while the undersigned cannot say whether the revelation affected his performance, the government's arguments at sentencing suggest that there may have been resultant animus reflected in his performance:

> It is abundantly clear that the vendetta is going the other way around. The defendant is doing everything he can to make this proceeding be about something that it shouldn't be. He spent the vast majority of -- I don't even know how long that was, but the vast majority of it, he wasn't talking about the defendant at all. He barely said anything about his client until the end.

S. Tr. at 419. The "he" that they reference is the undersigned. They alleged in argument that the undersigned was pursuing a vendetta against the government and Agent Labno rather than addressing his client. If that was true, then one could argue that it was an actual conflict of interest that affected the proceedings. The government apparently believed that. And, when they did, they had the absolute duty to request a conflict colloquy. It should have happened. He had a right to it. The undersigned was in no good position to address it. But, if they believed that, they had a duty to request, and the Court had a duty to conduct a conflict of interest colloquy.

Mr. Ferguson did not have the opportunity to knowingly and intentionally waive this conflict, as the government never disclosed that there was a DOJ-approved investigation. *United States v. Lowry*, 971 F.2d 55, 60-61 (7th Cir. 1992) ("A waiver is said to be knowing and intelligent if made with sufficient awareness of the relevant circumstances and likely consequences. The question is whether the defendant knew enough to make the choice an informed one--a rational reconciliation of risks and gains that are in the main understood." (internal quotation marks and citations omitted)). Mr. Ferguson could not knowingly and intentionally waive the conflict arising from his counsel learning during the examination of a witness that the DOJ had approved an investigation into him. Had the government disclosed the circumstances giving rise to the conflict, as it often does, Mr. Ferguson could have made an

informed decision regarding his representation before Agent Labno was ever on the stand. But, because the government withheld the information, because they kept it from Mr. Ferguson and the Court, he was only aware that an unscrupulous government agent that outrageously asked him about his attorney while knowing he was represented. They knew that the DOJ had approved an investigation into whether, according to the government, Mr. Ferguson and the undersigned were "co-conspirators." As outrageous as that claim is to the undersigned, it certainly was known to the government that this could create an actual conflict. Moreover, the government absolutely knew this issue was going to come up. The discussion between Labno and Ferguson about his lawyer was attacked in filing after filing (motion to dismiss for selective and vindictive prosecution, sentencing memorandums 1 and 2). When Labno was on the stand, they knew it was going to come up. They knew that the possibility of this ripening into a conflict of interest was likely. Yet, they chose to keep it from the Court. A series of 5 U.S. attorneys knew about this and its impending likelihood of arising. And they chose to kept it from the Court when they have a duty to request conflict colloquies when they know there is a likelihood a conflict will manifest.

     The risk of conflict in this circumstance is even more pronounced than the circumstance of a known, active investigation. If one is aware of an investigation, he can take the potential conflict into consideration in determining how to proceed with the case. But learning about some past investigation on the spot does not give one the opportunity to cool down and approach the situation with a level head. It thus runs a greater risk of affecting the attorney's performance. Indeed, the anger in response to Labno's answer cannot be denied. It occurred. And it may constitute an actual conflict of interest. While the undersigned cannot adequately assess any effect it may have had, Mr. Ferguson is at least entitled to have independent counsel on the

matter. And he should be given the right to consult that counsel from the vantage point he was in when this issue was thrust upon him unnecessarily. Knowing the confrontation between the undersigned and Labno was imminent, the government knew this was coming. They knew it was likely. There was a known potential for conflict that, upon the information's disclosure, could manifest into an actual conflict. They knew it ahead of time and had the audacity to keep it from Ferguson, the undersigned, and the Court. Had they simply disclosed it, Mr. Ferguson would have been consulting with independent counsel out of custody before this all happened. He could have made a decision on how to address the conflict issue. The Court could have determined the likelihood of this manifesting into an actual conflict of interest and engaged in the necessary colloquy. The undersigned would have had time to consider this information and not react immediately with anger in a way that was not avoidable due to the unexpected disclosure of the information.

      The government had the knowledge necessary to prevent all of this. They had a duty to the Court to advise and prevent all of this. Yet, just as happened throughout this case, they chose not to make those decision. They chose exclusion over disclosure and created the situation we are now in. And they now argue that the resultant conflict warrants no further consideration.

      But "the right at stake here is the right to counsel of choice, not [only] the right to a fair [sentencing]," *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006), and Mr. Ferguson was effectively deprived of that right because he was not afforded an opportunity to choose counsel with sufficient knowledge of the circumstances underlying the conflict. And deprivation of the Sixth Amendment right to counsel of one's choice does not require a showing of prejudice. *See id.* ("It is true enough that the purpose of the rights set forth in that Amendment is to ensure a fair trial; but it does not follow that the rights can be disregarded so long as the trial is, on the whole,

fair."). At the very least, Mr. Ferguson has a right to consult with independent counsel of his choice on this issue, on the litigation of this motion, and on these questions of conflict while in the position he would have been in had the government timely notified everyone that this issue existed. That means that Mr. Ferguson needs to be released from custody so that first step can happen and then a proper colloquy can follow. There is no jurisdictional bar to the Court permitting that release for that very reasonable purpose.

WHEREFORE, Mr. Ferguson respectfully requests that this Honorable Court grant his motion or, alternatively, release him from custody so he can consult with independent counsel freely as he would have been able if given the chance at the time this issue was untimely disclosed.

                                              Respectfully submitted,

                                              s/ Beau B. Brindley
                                              Attorney for Defendant

LAW OFFICES OF BEAU. B. BRINDLEY
53 West Jackson Boulevard
Suite 1410
Chicago, Illinois 60604
(312) 765-8878